[Crim. No. 7095. Second Dist., Div. One. Dec. 8, 1960.]

THE PEOPLE, Respondent, v. GEORGE NOTHNAGEL, Appellant.

220

Morris Lavine for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Jack E. Goertzen and Jack K. Weber, Deputy Attorneys General, for Respondent.

FOURT, J.—This is an appeal from a "Judgment and Sentence" in a case wherein the appellant was found guilty of a violation of section 288, Penal Code, and from an order denying a motion for a new trial.

Defendant, Nothnagel, was charged in an information with two counts of violation of section 288, Penal Code, and with two prior convictions; namely one for forgery and one for escape from a state prison. Nothnagel admitted the prior convictions and pleaded not guilty. A jury found him guilty of Count II as charged in the information. The motion for a new trial was denied and he was sentenced to the state prison.

A résumé of the pertinent facts is as follows:

The victim in the case was a girl of the age of 8 years at the time of the trial and qualified to testify. She lived with

her mother and five brothers. Defendant had been to their home on frequent occasions and at one time was very friendly with the mother of the victim. On Friday night, July 31, 1959, the victim was at home with her brother, John, aged 16, who was playing phonograph records. The mother of the victim was not at home on the night in question. The defendant was at the house on this occasion and told John several different times to go upstairs and go to bed which John did at or about 3 a. m.

The victim slept in a bedroom upstairs and she heard the defendant approaching her room. Defendant came into the victim's bedroom and upon moving aside some of her clothing committed an act which is unnecessary to describe here. Suffice it to say that the act was well within the definition of the offenses referred to in section 288 of the Penal Code. The victim urged the defendant to stop, screamed and called for her brother, and ran down the hallway to the room of her brother, John. The brother, John, concerning this occasion described the victim as being out of breath, talking fast and running toward him. When the brother arrived at the victim's bedroom the defendant got off of the bed and went downstairs with his pants' zipper open. The victim was told by the defendant not to tell the brother what had occurred. After the victim told her brother what did take place the brother then advised the defendant to leave the house. The brother and the defendant scuffled or made contact with each other. The brother went upstairs to his room and watched the hallway until about 5 a. m. The defendant went to sleep on a couch in the living room.

On Saturday morning, August 1, 1959, after talking with the victim about what had taken place during the night, the mother called her sister. The victim was then taken to the police station to make a complaint.

The mother attempted to make arrangements to have the victim examined on Saturday. The victim was examined at the General Hospital by a Dr. Schaeffer. The mother was of the belief that such examination took place on Saturday in the early afternoon. The doctor stated at the time he testified upon the motion for new trial that he examined the victim on August 3d. The mother did not know the doctor's first name. The mother attempted to secure a report of the doctor's findings but she could not get it. She was told that she would have to go to the police department and when she went back to the police department she was told by someone in that

office to take the child to Lathrop Hall (Juvenile Hall). The mother went back to the General Hospital and again attempted to get a copy of the report of the examination of the victim and was again refused. The victim was examined by Dr. Cummings at Lathrop Hall (Juvenile Hall) on August 4, 1959.

Dr. Cummings was licensed to practice medicine in California since 1932 and was engaged in examining juvenile patients at Juvenile Hall. Defendant apparently had no doubt about the qualifications of the doctor for he asked no questions with reference thereto. Dr. Cummings stated in effect that the victim was bruised, that there was an inflammation and that a male private part probably produced the condition.

Appellant now contends that (1) he was denied certain discovery proceedings; (2) there was a willful suppression of evidence; (3) the prosecution's evidence is inherently improbable; (4) he was unduly restricted in cross-examination; and (5) the court erred in denying the motion for a new trial.

On September 23, 1959, the defendant filed a notice that he would, on September 29, 1959, make a motion for an order to compel the district attorney and the Chief of Police of Los Angeles to ''produce for examination all statements made to the Office of the District Attorney and to the Los Angeles Police Department by *Sheila Deville, John Deville and Ruby Deville.*'' (Emphasis added.)

Appellant now asserts that he should have been furnished with a copy of the report of Dr. Schaeffer; that the request for the statements of the DeVilles necessarily included the statement of Dr. Schaeffer. There is nothing in the record in this court showing what the order of the trial court was with reference to the motion of defendant to produce the statements of the DeVilles. Defendant apparently got what he asked for and that did not include the report of any doctor. Had the appellant wanted to inspect the report of any doctor he should have asked for it. This he did not do. (See *People* v. *Gallegos,* 180 Cal.App.2d 274, 277 [4 Cal.Rptr. 413].) ▆▆ It is true that under the present law a defendant can compel the prosecution to permit the inspection and copying or production in court of certain written statements of the accused and other papers and instruments. (See *People* v. *Norman,* 177 Cal.App. 2d 59, 63 [1 Cal.Rptr. 699].) Where, however, no proper demand is made by the defendant for the desired document or report, the prosecution cannot be expected to volunteer the information to the defendant.

At the oral argument appellant asserted in effect, that dis-

covery proceedings should include every conversation had with the police by anyone connected with the case. The mother here was obviously being shuttled back and forth between two governmental agencies. The statements she made were not being written down and she apparently never knew the names of the police officers she talked with. It appears to this court that appellant's request for "statements" did not include the mother's conversations which so far as the record before us indicates were never reduced to writing.

It is apparent from a reading of the record that the deputy district attorney did not know of the report of Dr. Cummings until on or about the second day of the trial and at that time he promptly advised the defendant of such and defendant was permitted to inspect the report. It is further apparent from the record that the deputy district attorney did not know of any report of Dr. Schaeffer at the time of the start of the trial and made no effort at any time to hide or suppress any evidence. There was no suggestion at the time of the trial by the then attorney for appellant that there was any suppression of evidence or that there was any conduct on the part of the prosecution which was other than entirely proper.

There is not the slightest showing in the record of anything prior to the proceedings with reference to the motion for a new trial which shows or tends to show that the reports of the two doctors may have been at variance.

The recital of a part of the evidence as heretofore set forth is sufficient to dispose of the contention that the case of the prosecution was inherently improbable. Appellant insists that the victim disliked the appellant and said so. It is not impossible, however, for a person to tell the truth about another person even though she dislikes or abhors such person.

Appellant states that the statements of the victim were inconsistent. If there were any inconsistencies in the testimony of the victim, that alone would not necessarily constitute improbability. (*People* v. *Spigno,* 156 Cal.App.2d 279, 284 [319 P.2d 458].) It was the province of the jury to determine the credibility of the witnesses. The jury apparently believed the victim and disbelieved the defendant.

Appellant's next contention is that he was curtailed in his cross-examination of the mother of the victim. Defendant claims that he desired to show the relationship which existed between himself and the mother; that he had supported her in part and that they had parted company and she no longer cared for him and that the mother induced the

victim to make up the charge against him. The scope of the cross-examination is generally limited to the scope of the direct examination. There was nothing in the direct examination of the mother from which it might even be inferred that she had had any improper relations with the appellant or that she had caused the victim to make a false charge against the appellant. The accusation in this case came from the victim and not from the mother. The fact is, however, that a reading of the record discloses that the mother of the victim did answer appellant's questions about her feelings toward him; the fact that they had been friends; and that he had helped her; that there had been arguments between them which resulted in property being destroyed. The defendant was not permitted to inquire as to whether the mother of the victim and the defendant represented themselves to be husband and wife. However, under the circumstances in this case, it was of no particular significance. The trial judge had the parties before him and as he pointed out at the time, "What difference would it make in this crime whether they were married, if he did this act?" Many of the matters of which appellant now complains were never asked of the witness in the form of questions. True it is that the judge indicated that he was a little dubious about certain questions being put to the witness but he did not tell the defendant or defendant's counsel not to ask the questions which appellant now suggests would have brought out damaging evidence as to the mother of the victim.

A reading of the record as a whole demonstrates that the defendant had great latitude in his cross-examination and if he was restricted at all it was of no consequence.

Appellant's last contention has to do with the motion for a new trial. Appellant's counsel produced a Dr. Schaeffer at the hearing on the motion for a new trial. Dr. Schaeffer stated in effect that he had examined the victim on August 3, 1959, and found no bruises on the victim; however, that the hymen "might have been slightly stretched——." He gave as his opinion that there was no "penetration of her genitals by an adult male penis within the previous four or five days," from the date of the examination. The doctor further stated that he had examined only six or so female children under the circumstances as here presented; that he was not a specialist in the field; that there was a discharge from the victim's vagina which could have resulted from an inflammation. The doctor also stated that he did not examine the victim's vagina but merely the entrance to the vagina. He defined "penetration" as used

in his testimony as "into the, beyond the entrance to the vagina" and further stated that "one could introduce the tip of the penis into that area but without penetrating beyond the entrance to the vagina" and not leave any mark. Furthermore, in a case involving a prosecution for a violation of section 288, Penal Code, it is not necessary to sustain a conviction that rape be established or that there even be an attempt to commit rape, or that there be any penetration as that term was used by the doctor. (*People* v. *Showers,* 90 Cal. App.2d 248, 253 [202 P.2d 814].) The corpus delicti of the crime consists of (1) any lewd or lascivious act upon any part of the body, (2) of a child under the age of fourteen years, (3) with intent of arousing, appealing to or gratifying the lust or passions or sexual desires of either the perpetrator or of such child. (*People* v. *Bronson,* 69 Cal.App. 83 [230 P. 213]; *People* v. *McCurdy,* 60 Cal.App. 499 [213 P. 59]; *People* v. *Showers, supra,* 90 Cal.App.2d 248, 253; *People* v. *Shields,* 70 Cal.App.2d 628 [161 P.2d 475].) In fact it would seem that the questioned act does not necessarily have to be sexual in character.

"Section 288 of the Penal Code was enacted to protect children from the lustful advances and tamperings of callous and unscrupulous persons as well as from the assaults of depraved unfortunates. In all cases arising under this statute the purpose of the perpetrator in touching the child is the controlling factor and each case is to be examined in the light of the intent with which the act was done." (*People* v. *Hobbs,* 109 Cal.App.2d 189, 192 [240 P.2d 411].)

Appellant states that he tried to locate Dr. Schaeffer over the week end but did not find him. He made no request of the trial court for an order for the doctor to appear and he made no motion for a continuance. It was appropriately stated in *People* v. *Norman, supra,* 177 Cal.App.2d 59, 67 [1 Cal. Rptr. 699]:

"At the hearing of the motion for a new trial defendant produced two witnesses who testified they were fellow sailors on leave in the Los Angeles area the afternoon of February 14, 1958; that they saw defendant, or a person resembling defendant, pick up some articles, including a couple of books, in the parking lot of Sears' store in Hollywood and put them in a Cadillac automobile. Defendant's argument, in effect, is that the trial judge should have believed the testimony of these witnesses and, accordingly, granted a new trial.

 "These requirements must be fulfilled for the grant-

ing of a new trial on the ground of newly discovered evidence: (1) the evidence and not merely its materiality must be newly discovered; (2) the evidence must not be merely cumulative; (3) a different result must be probable on a retrial of the cause; (4) the party could not with reasonable diligence have discovered and produced it at the trial; (5) these facts must be shown by the best evidence which the case admits. (*People* v. *Sutton,* 73 Cal. 243, 247 [15 P. 86]; *People* v. *Beard,* 46 Cal.2d 278, 281 [294 P.2d 29]; *People* v. *Warren,* 175 Cal.App. 2d 233, 245 [346 P.2d 64].) ██ A motion for a new trial on the ground of newly discovered evidence is looked upon with disfavor, and the trial court's ruling in that regard will not be disturbed except on a clear showing of an abuse of discretion. (*People* v. *Miller,* 37 Cal.2d 801, 807 [236 P.2d 137]; *People* v. *Greenwood,* 47 Cal.2d 819, 821 [306 P.2d 427]; *People* v. *Patterson,* 169 Cal.App.2d 179, 187 [337 P.2d 163].)

"It was for the trial judge to weigh the effect of the testimony of the two witnesses. He disbelieved their stories. They reflected a number of uncertainties and inconsistencies and may not have been at all persuasive. Further, the trial judge may have concluded that defendant could have with reasonable diligence discovered and produced the evidence at the trial or that their testimony was such that a different result would not be probable on a retrial. There is nothing to suggest that he in any way abused his discretion."

The attempted appeal from the sentence is dismissed.

The judgment and the order denying a new trial are and each is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied December 29, 1960, and appellant's petition for a hearing by the Supreme Court was denied January 31, 1961.