[Crim. No. 25245. Second Dist., Div. One. Dec. 20, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM RUSSELL KINGSTON, JR., Defendant and Appellant.

**COUNSEL**

Michael Friedman, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, and Alan G. Novodor, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**HANSON, J.—**

### THE CASE

By information, William Russell Kingston, Jr. (hereinafter referred to as defendant) was charged with incest in violation of Penal Code section 285, with statutory rape in violation of Penal Code section 261.5, and with violating section 288 of the Penal Code—lewd and lascivious act against a child. Defendant pleaded not guilty.

Defendant personally and by counsel waived jury trial and agreed to have the case submitted to the court on the preliminary transcript as to the charge of Penal Code section 288. Defendant was found guilty of the charge.

Criminal proceedings were suspended, mentally disordered sex offender proceedings were instituted and a total of three psychiatrists were appointed to examine the defendant to determine whether he was a mentally disordered sex offender. The matter was submitted on the basis of the medical reports, and on July 31, 1972, the court determined that defendant was a mentally disordered sex offender. Defendant was then committed to the Department of Mental Hygiene at Atascadero State Hospital for an indeterminate period, pursuant to Welfare and Institutions Code section 6316. The superintendent of Atascadero State Hospital was directed by the court to make semiannual reports to the court regarding the defendant's progress toward recovery. On motion of the People, the remaining charges were dismissed in the interests of justice.

On September 25, 1973, defendant was returned from Atascadero and criminal proceedings were resumed. Defendant's motion for release on his own recognizance was argued and granted, and a supplemental probation report was then ordered by the court.

On October 19, 1973, defendant was ordered remanded and delivered to the Department of Corrections pursuant to section 1203.03 of the Penal Code. On March 15, 1974, defendant was sentenced to state prison for the term prescribed by law, with credit given for 657 days in custody. Defendant's request for probation was denied.

Defendant appeals from the judgment of conviction.

## THE FACTS

One day in early March of 1972, at approximately 7 a.m., Toni Rowe, a 13-year-old unmarried girl, went to meet the 30-year-old defendant who she had known all her life since he was her first cousin (her mother's sister's son). They had a prearranged date to see each other in front of a restaurant. The defendant picked up Toni in his car and they drove to his house. Toni did not go to school that day, and while the defendant was at work, she cleaned his house. When the defendant returned from work a few hours later, the defendant and Toni kissed and hugged until the defendant had to go back to work. Toni then resumed her housecleaning chores until the defendant returned again. They again began to kiss until the defendant had to go on his last route for his job, at which time he wished her to accompany him. She went with the defendant to his place of employment, and after 2 p.m., they returned to the defendant's house. They were home alone.

The couple began kissing and hugging, at which time they both undressed and had sexual intercourse three times that afternoon and looked at some Playboy magazines. She had had intercourse with the defendant once before. The defendant inserted some contraceptive foam into Toni only once before having intercourse with her.

Thereafter, Toni left the house and went to a nearby store where she met her aunt who took her to the defendant's house and then home. She told her mother that she was playing hooky from school and made up an excuse as to why she was late. After a discussion with her mother, and after her mother had told her that she was going to take her to a doctor, Toni admitted having intercourse with the defendant.

Toni had known the defendant all of her life and they had become especially close during the two-month period when the defendant had lived at her parents' house in 1971. Toni's mother had several conversations with Toni and with the defendant separately concerning the degree of the close affectionate relationship they had displayed toward each other. During the time the defendant had lived at the house, he frequently gave Toni friendly kisses every day which Toni's mother had seen. The nature of the kisses changed after the defendant had moved out. The defendant and Toni had several times discussed, privately, getting married. Toni had told the pastor of her church that she loved her cousin (the defendant) very much. Toni's mother, one Violet Rowe, was aware of the close affectionate relationship between her daughter and the defendant during the time the defendant had lived with the family. Toni's mother had seen the defendant and Toni kiss out by the car at one time, and Mrs. Rowe had asked the defendant not to show so much affection toward Toni because she believed Toni had a crush on him. Mrs. Rowe felt there was nothing abnormal about the relationship, and was shocked to learn that Toni was having intercourse with the defendant.

## ISSUES

On appeal the defendant contends (1) that his sentence was invalid, constituting "cruel or unusual punishment" under article I, section 6 of the California Constitution; (2) that the defendant's conviction and sentence were invalid under the equal protection clause of the Fourteenth Amendment; and (3) that the trial court's denial of probation was an abuse of discretion.

## DISCUSSION

### I

The defendant first contends that his sentence constituted cruel or unusual punishment in violation of article I, section 6 of the California Constitution.

Penal Code section 288 states: "Any person who shall wilfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in part one of this code upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to, or gratifying the

·lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the State prison for a term of from one year to life."

The California Supreme Court in regard to punishment for a crime, stated in *People* v. *Anderson,* 6 Cal.3d 628 [100 Cal.Rptr. ·152, 493 P.2d 880], at page 640: ". . . The Legislature is thus accorded the broadest discretion possible in enacting penal statutes and specifying punishment for crime, but the final judgment as to whether the punishment it decrees exceeds constitutional limits is a judicial function."

This court in the case of *People* v. *Smith* (1974) 42 Cal.App.3d 706 [117 Cal.Rptr. 88], in affirming a conviction for Penal Code sections 486 and 487, subdivision 2, and upholding the indeterminate sentence given therein, stated in regard to the constitutional dimension of indeterminate sentencing: "*Lynch* [*In re Lynch,* 8 Cal.3d 410 (105 Cal.Rptr. 217, 503 P.2d 921)] requires that the constitutionality of a statute imposing an indeterminate sentence be tested by the maximum possible term prescribed. (8 Cal.3d at p. 419.) If that maximum term 'is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity,' it violates the constitutional proscription. (8 Cal.3d at p. 424.) 'Whether a particular punishment is disproportionate to the offense is, of course, a question of degree. . . . The judiciary . . . should not interfere in [the legislative] process [of prescribing penalties for criminal offenses] unless a statute prescribes a penalty "out of all proportion to the offense" . . . .' (8 Cal.3d at pp. 423-424.) Proportionality is to be tested by 'the nature of the offense and/or the offender' (8 Cal.3d at p. 425), the violent or non-violent nature of the crime (8 Cal.3d at p. 425), the presence or absence of aggravating circumstances (8 Cal.3d at p. 426), comparison of the penalty 'with punishments prescribed in the *same jurisdiction* for *different offenses*' (8 Cal.3d at p. 426), and 'comparison of the challenged penalty with the punishments prescribed for the *same offense* in *other jurisdictions* . . .' (8 Cal.3d at p. 427)."

Defendant relies heavily on the case of *In re Lynch, supra,* where Lynch had been twice convicted of a misdemeanor of indecent exposure and was incarcerated for an indeterminate term prescribed by law for the second offense which had a top on it of life imprisonment. The Supreme Court noted that what Lynch was being incarcerated for was the type of behavior that was more of a social nuisance than an offense that caused personal injury. Lynch's indecent exposure constituted no physical

aggression or contact, and was the type of crime where the exhibitionists were relatively harmless offenders—more of an embarrassment and a public nuisance than an individual who could be considered dangerous to the public at large. *In re Lynch* goes to great lengths throughout the opinion to differentiate that case where there was no contact between the exhibitionist and the victim and cases where there was actual touching or molesting by actual contact between the aggressor-defendant and the victim. (See *In re Lynch, supra,* 8 Cal.3d at p. 432.)

The type of offense committed by the defendant in the case at bench was not of the type in *In re Lynch.* In the instant case the defendant was charged and convicted of committing a lewd and lascivious act on a child under the age of 14 in violation of Penal Code section 288. There was an actual contact between the defendant and the victim, that being sexual intercourse, and the resulting psychological damage that could result is far greater than what was considered in *In re Lynch,* where a mere showing of someone's private parts constituted the crime.

█ " 'Section 288 of the Penal Code was enacted to protect children from the lustful advances and tamperings of callous and unscrupulous persons as well as from the assaults of depraved unfortunates. In all cases arising under this statute the purpose of the perpetrator in touching the child is the controlling factor and each case is to be examined in the light of the intent with which the act was done.' " (*People* v. *Nothnagel,* 187 Cal.App.2d 219, 225 [9 Cal.Rptr. 519]; see also *People* v. *Hobbs,* 109 Cal.App.2d 189, 192 [240 P.2d 411].)

█ The diagnostic study made pursuant to Penal Code section 1203.03 at Atascadero State Hospital concluded (1) that the defendant had an antisocial personality, severe; sexual deviation; pedophilia, female; but was no longer a danger to minor children; (2) that the defendant behaved impulsively and tended to react with insufficient control when faced with conditions of pressure; and (3) that the defendant was not cooperative; was a con artist; put the blame on the victim; used drugs and alcohol; and participated in peeping tom activities. The report also stated that defendant tended to put the blame on others and tended to give a "snow job" to persons who were interviewing him.[1]

---

[1]The court in reviewing the record said: "Robert Moore, his uncle, who has written a letter for him, or at least signed a letter for him,—and it is interesting as to who wrote that letter as well as another letter—was in Atascadero, having been placed there by this Court. He lives in the same place where the Rowes live.

"Jack Moore, apparently his uncle, molested the defendant. He is now in the hospital

One psychiatric report contains the following: "His sexual history begins at the age of five, when he had intercourse with a nine-year old girl over a period of a couple of weeks, several times. At the age of seven, he had intercourse with a girl who was approximately eleven years old, off and on over a period of two years. At the age of eleven, he started masturbating once a week. He still continues to masturbate about once a week. At the age of twelve, he had a homosexual contact with an uncle off and on for about three years until the age of fifteen. At the age of sixteen, he went around with a woman with whom he had sexual relationships fairly frequently. She was eighteen years old when he was sixteen and this continued for about one year. From then on he has had frequent relationships with girls about his own age through the rest of high school, until he met his first wife. In 1966, he had a homosexual experience with an older man, when he was 'sucked off.' Between 1966 and 1969, he had sex with five different women, each over a period of a time. The longest affair of all of these is eighteen months." (C.T. p. 45.)

The defendant also challenges the penalty which may be imposed in California for other offenses deemed more serious than that of which he was convicted. While there may be many crimes in California for which sentences are much less than the sentence imposed on the defendant in this case, the offense in the case at bench involves sexual activity by a 30-year-old man with a 13-year-old child, as distinguished from Penal Code section 261.5, statutory rape, where there is an act of intercourse with a female under the age of 18 years. Again, the case at bench involves lewd or lascivious acts by a 30-year-old man upon a child under the age of 14 years. The people of the State of California, speaking through their Legislature, consider this type of activity serious enough that in order to protect its minors, an individual convicted of such an offense cannot be returned to society until completely rehabilitated.

Accordingly, we hold the statute at issue is constitutional and does not provide "cruel or unusual" punishment.

receiving treatment. He apparently also molested Jack Moore's sister Beverly Moore. He owns the place where Robert Moore is living. Richard A. Moore is supposed to have molested a child and pimped for his wife, Violet. Violet Rowe was supposed to have been molested by Charles Moore, her father, and by Charles A. Moore, her brother.

"Toni Rowe was the victim. Joyce Jordan was the defendant's wife, and she, the defendant says, told him that she wanted him to have relations with her girlfriend, and she wanted to have relations with the defendant's friend, and the defendant himself admits he was a con and a wierdo." (R.T. p. 65, line 12 through p. 66, line 1.)

## II

The defendant's second contention that the conviction and sentence under Penal Code section 288 violate the equal protection clause of the Fourteenth Amendment of the United States Constitution is also without merit. The fact that other types of crime, which are not analogous to this type of crime, may have a lesser sentence does not deprive the defendant of due process. The defendant was charged with this specific crime, which is not like other types of crime, such as burglary, robbery, rape, etc. It is the only crime that deals with the lewd and lascivious acts committed by an adult upon a minor and defendant was afforded all of his rights and considerations, under the law, as was afforded any other individual charged and convicted of the same offense.

## III

■ Defendant's final contention that the court abused its discretion in denying probation is without merit. The trial court initially allowed the defendant to be released on his own recognizance. However, after the court had read the probation and psychiatric reports dealing with the defendant's past conduct and life style, it expressed the view that defendant should not be given probation.

■ Granting or denying probation rests in the sound discretion of the trial judge, and a heavy burden is imposed upon a defendant to show abuse of that discretion in denying a request for probation. (*People* v. *Brown,* 271 Cal.App.2d 391, 396 [76 Cal.Rptr. 568].) ■ In the case at bench, based upon the information which was considered by the trial judge, heretofore discussed, we hold there was no abuse of discretion, nor was there an arbitrary determination in denying the defendant probation. (See *People* v. *Henderson,* 226 Cal.App.2d 160, 163 [37 Cal.Rptr. 883]; *People* v. *Ingram,* 272 Cal.App.2d 435, 438 [77 Cal.Rptr. 423].)

Judgment affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 13, 1975.