[Crim. No. 43025. Second Dist., Div. Three. Feb. 22, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWIN JAMES MEACHAM, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*At the direction of the court, and pursuant to California Rules of Court, rules 976 and 976.1, the portion of the opinion certified for publication follows.

**COUNSEL**

Clark, White, Breslin, Hutton & Holmes, Richard A. Hutton and Jonathan K. Golden for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Howard J. Schwab and Beverly K. Falk, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ARABIAN, J.**—Following trial by jury, Edwin James Meacham was convicted of nine counts of lewd and lascivious acts on or with the body of a child under fourteen (Pen. Code, § 288, subd. (a), counts I, II, III, IV, V, VI, VII, VIII, X, XI) and one count of lewd and lascivious acts upon or with the body of a child under fourteen by use of force, violence, duress, menace, or threat of great bodily harm (Pen. Code, § 288, subd. (b), count IX).[1] Appellant was sentenced to state prison for the seven-year upper term on count I, consecutive sentences were imposed for counts II, III, IV, V, VI, VII, X and XI, and a full five-year middle term consecutive sentence was imposed for count IX, for a total sentence of twenty-six years and eight months. Appellant appeals from the judgment.

### CONTENTIONS

Appellant contends on appeal: . . .* (2) an erroneous instruction based on *People* v. *Austin*[2] was given to the jury, . . .* (4) the court erroneously admitted irrelevant and prejudicial testimony concerning behavioral changes in the children, (5) the trial court erroneously admitted hearsay statements

---

[1] Appellant was originally charged in a 17-count information with violations of Penal Code section 288, subdivisions (a), (b). After certain counts were reduced to lesser violations and others were dismissed pursuant to appellant's Penal Code section 995 motion, the parties stipulated to the remaining counts and the information was renumbered accordingly.

[2] *People* v. *Austin* (1980) 111 Cal.App.3d 110 [168 Cal.Rptr. 401].

which provided the essential "touching" element necessary for conviction. . . ■

We have determined that this case must be remanded for the limited purpose of resentencing, but in all other respects, the judgment is affirmed.

### FACTS AT TRIAL

The facts introduced at trial show that on May 11, 1981, Los Angeles Police Department Detective Steve Hales, an investigator for the department's sexually exploited child unit, executed a search warrant for appellant's residence and Isabel's Nursery School, which was operated by appellant and his wife. While searching the school, officers found a camera containing undeveloped film which, when subsequently developed, depicted closeup views of a small child's vagina and a male finger. The search of appellant's home produced a variety of photographic and developing equipment. In a den closet which contained appellant's clothing, the officers discovered two large boxes containing eleven smaller boxes. In the smaller boxes the officers found a collection of approximately 2,000 slides of the children victims in this case. There were from two to several hundred slides of each child, showing the child in the nude, dressed or partially nude. Many of the pictures were closeup views of the child's vagina or penis and in certain of the pictures the child was shown touching his or her own genitalia. The officers also found in these smaller boxes five slides of appellant in the nude. In a room next to the den the officers discovered a large shopping bag containing packages of cookies.

The 11 boxes of slides were organized and divided into sections; a divider separated the slides of each individual child. On each of the slides was written, in appellant's handwriting, the name of the child and the date on which the slide was taken. Most of the pictures were taken in the school bathroom and the den or hall of appellant's home.

Photographs of the children were made from selected slides and displayed at trial. Each child victim's mother viewed the photographs of her own child and testified that she had not given appellant permission to take the pictures. Nine of the eleven victim's mothers testified that during the time her child attended Isabel's Nursery School, the child could not remove his or her clothing without the assistance of an adult.

Detective Hales testified that persons like appellant, who have a sexual preference for children (pedophiles), have identifiable characteristics. They

take many photographs of their victims, treat the photographs as important possessions and organize and label them neatly in an album or boxes. These individuals are generally sexually interested in children of a specific age-range and find employment or a hobby which puts them in legitimate social contact with children of the age range preferred.

The People's medical expert, a pediatrician and fellow in child development, specifically in the area of child sexual and physical abuse, viewed the People's photographic exhibits of the child victims. She concluded that most of the poses the children assumed in the photographs were not natural but could be taught to children between two to five years of age if an adult either physically posed the children or demonstrated the pose. Some of the poses were of the type used in child and adult pornography.

The following evidence in regard to each specific count was also presented at trial:

*Count I—Misha S.*

Misha's mother, Mrs. S., testified that Misha was enrolled in Isabel's Nursery School in May of 1979, when she was two and a half years old. Except for a one-month period in 1980, Misha attended school daily until February 13, 1981, when Mrs. S. permanently removed Misha because she was uncomfortable about the school. Mrs. S. removed Misha from school for one month in August of 1980, because one evening during dinner with her parents, Misha stated: " 'James [appellant] took pictures of me' " and " 'He took my clothes off and took pictures of me.' " She also said, " 'James touched my butt' " or " 'bottom.' " Misha did not make these comments in response to questions. She had not been spanked nor were her parents mad at her. She was not upset or embarrassed; she spoke in a normal conversational tone.

Mrs. S. recalled that when Misha returned to Isabel's for the second time, she cried almost every morning when left at school. Mrs. S. had noticed behavioral changes in Misha from the day she began attending Isabel's Nursery School. She began wetting her bed almost every night and would awaken frightened and would not want to go back to bed. When Misha stopped going to the nursery school the bed wetting and troubled night behavior stopped.

*Count II—Hannah C.*

Hannah's mother, Mrs. C., testified that she enrolled her three-year-old daughter at Isabel's Nursery School in June of 1978. Mrs. C. took her out

of the school three months later because one day when Hannah was in the bathroom she said, "'Mommy, the teacher put off my pants and touched my bottom.'" She was not crying or upset when she made the comment. She was speaking in a normal tone of voice.

During the entire period Hannah was attending Isabel's, she had nightmares, wet her bed and was sick, usually with a cold. Whenever she was given something she would ask if it was being given to her because she was a "good girl."

### Count III—Rain-Romany J. (Rainy)

Mrs. J., Rainy's mother, testified that she had enrolled Rainy in Isabel's Nursery School in September of 1978 when Rainy was two and a half years old. One day in July or August of 1979, Mrs. J. asked Rainy what she had done in school that day. Rainy replied, "'Well, James took pictures of my butt.'"

During the time Rainy attended Isabel's her behavior changed. She was very "clinging" and would beg her mother not to leave her to go to work. Rainy became extremely jealous of other little girls. She started to have "accidents." The "accidents" stopped when Mrs. J. took Rainy out of Isabel's in February of 1980.

### Count IV—Aaron T.

Aaron's mother, Mrs. T., testified that Aaron began attending Isabel's Nursery School in May of 1980 when he had just turned two years old. He stopped going to the school in May of 1981 after Mrs. T. received a call from the police.

During the time Aaron attended the school, his behavior changed. He began having nightmares, wetting the bed, having erections and masturbating. The troubled behavior stopped a month or two after Aaron left the school. Moreover, Aaron cried every day before school when enrolled at Isabel's although he did not cry when he subsequently attended a different school.

### Count V—Liza B.

Liza's mother, Mrs. B., testified that Liza was enrolled at Isabel's Nursery School in April of 1979, when she was two and a half years old. She attended the school until Mrs. B. received a call from the police in May of 1981.

Mrs. B. recalled that during a three-week period when she had to go to work early, and thus had to deliver Liza to school earlier than usual, Liza cried every day. During those three weeks appellant was the only person at the school when Liza arrived.

*Count VI—Dionn W.*

There were only two slides of Dionn, both dated July 8, 1980. They show Dionn nude from the waist down, with a distressed and fearful look on his face.

Mrs. W. testified that Dionn attended Isabel's Nursery School from September of 1979 to April of 1981. He was four years old when he was enrolled at the school. Mrs. W. recalled that during a three-month period of the summer Dionn was four years old (a period which coincides with the picture taking episode), he would cry if he was left at the school alone.

Dionn, who was six years old at the time of trial, was one of two children who testified at trial. Dionn recalled that one day when he was in the school bathroom with the door closed and standing up with his pants down, appellant opened the door, picked him up, took him into another room of the school and took pictures of him. Dionn testified that when he attempted to pick up his pants appellant said, " 'Leave them down.' " Dionn remembered he was angry with appellant.

*Count VII—Kimberly D.*

Mrs. D., Kimberly's mother, testified that Kimberly attended Isabel's Nursery School for approximately one month during part of March and April of 1980. Kimberly was almost five years old at that time and she *was* able to undress herself without the help of an adult. Mrs. D. had never given appellant permission to take Kimberly off the school grounds.

Mrs. D. noticed behavior changes in Kimberly during the time she attended the school. She liked to kiss a lot more and on many occasions she tried to "French kiss" her mother. She also wanted to play house with little boys and told her mother that the boys had wanted to remove their clothing. Mrs. D. recalled that Kimberly had a rash on her vagina during the time she attended Isabel's. Kimberly's unusual behavior stopped two or three months after she was removed from the school.

Kimberly, who was six years old at the time of trial, was one of only two children to testify.[3] Kimberly recalled that appellant had taken nude pictures

---

[3]Dionn was the first child to testify at trial.

of her at his house. He told her to remove her clothing and she had done so. She testified that appellant touched her on the inside of her right upper thigh. He was nice to her when he was taking the pictures. When appellant finished photographing Kimberly and the other girls he gave them cookies. Although appellant told Kimberly not to tell her mother or father that he had taken nude pictures of her, she did tell her mother.

### Count VIII—Erika K.

Mrs. K., Erika's mother, testified that Erika began attending Isabel's Nursery School in September of 1979, just one month after her second birthday. Mrs. K. took her out of the school on February 8, 1980.

During the five months that Erika attended the school, she cried each morning when handed to appellant. There were behavioral changes in Erika during that period. She avoided all male members of the family for whom she had previously shown affection and she began to masturbate. About a week or two after Erika started school, Mrs. K. took Erika to an emergency room because she noticed a purple area around her vagina. The doctor diagnosed it as a mild inflamation. Mrs. K. also recalled that after attending Isabel's, whenever Erika's photograph was taken, she would pose sexily as though she were Mae West.

### Count IX—Melissa J.

Appellant took 106 slides of Melissa. In one picture, appellant's hand is shown lifting up her dress; in two pictures, his hand is pulling off her panties while she tries to hold onto them; and in another picture, appellant's hand appears to be pushing against Melissa's hand while she, totally nude, tries to push his hand away. In the four pictures showing appellant's hand, Melissa is either crying or has an expression of extreme fear or distress.[4]

Mrs. J. testified that Melissa began to attend Isabel's Nursery School in August of 1979 when she was four years old. During the period Melissa attended Isabel's, Mrs. J. noticed behavioral changes in her daughter. She constantly touched herself in the vaginal area although she never did that before. Mrs. J. recalled an incident when she caught Melissa and her cousin Jason (count X) in sex play. Melissa's pants were half down and Jason was standing over her.

---

[4]These pictures, which expose appellant as the probable cause of Melissa's obvious fright, were the basis for the People's allegation in count IX that appellant violated subdivision (b) of Penal Code section 288, rather than subdivision (a), by committing the lewd act upon Melissa through "force, violence, duress, menace or threat of great bodily harm."

One day in August of 1980, when Mrs. J. was undressing Melissa to put on her pajamas, Melissa said, " 'Mommy, James took me to his house, took off my clothes and took pictures of me.' "

*Count X—Jason H.*

Jason was enrolled in Isabel's Nursery School on September 11, 1978, when he was two years old. Mrs. H., Jason's mother, noticed a change in Jason's behavior while he was attending Isabel's. He became "unruly" and his parents took him to a psychologist. Mrs. H. also described the incident when she and Melissa's mother discovered Melissa (count IX) and Jason engaged in sex play and recalled that Melissa had her pants partially down.

*Count XI—Tara V.*

Appellant took 67 slides of Tara between May 21, 1980, and June 6, 1980. The slides showed Tara clothed, partially nude and nude. There were closeups of her face and closeups of her vagina. Four of the slides showed closeups of appellant's fingers on Tara's genitalia.

Mrs. V., Tara's mother, testified that Tara attended Isabel's Nursery School for two years. She started school in January of 1979 when she was two and a half years old. During that time she complained that her "butt" and her vagina hurt. She never made that type of complaint before attending Isabel's.

Appellant did not testify at trial. However, he presented a psychiatric defense to show he was not sexually motivated in taking pictures of the children and believed he was doing research in child development.

DISCUSSION

*II. The instruction based on People v. Austin was correct.*

Appellant challenges the holding and reasoning of *People v. Austin* (1980) 111 Cal.App.3d 110 [168 Cal.Rptr. 401], and contends the instruction to the jury based on that case prejudiced his cause.

The *Austin* instruction about which appellant complains was requested by the People and states in pertinent part: "The touching required may also be done by the child victim on its own person providing that such touching was at the instigation of a person who had the required specific intent." (See the official comment to CALJIC No. 10.30 (1980 revision).) The jury was also properly instructed with CALJIC No. 10.30 (1980 Revision—

Lewd Act With Child, Pen. Code § 288 (a)) and No. 10.30.1 (Lewd Act With Child—By Use of Force and Violence Against Will of Child, Pen. Code § 288 (b)).

Appellant asserts the *Austin* case sets forth an incorrect statement of law and was wrongly decided. Appellant urges in support of his position that *Austin* was expressly disapproved by Division Five of this court in *People v. Perkins, supra,* 129 Cal.App.3d at page 20. Our reading of that case, however, reveals that *Austin* is not relevant to the question decided in *Perkins* and that the *Perkins* court misinterpreted the *Austin* holding. The inquiry in *Perkins* was whether a touching preparatory to the commission of an unlawful sex act with a child is a separately punishable Penal Code section 288 violation.[5] The *Perkins* court held, and correctly so, that to separate a preparatory touching from an unlawful sex act in order to convict and punish a defendant for two sex crimes, rather than one, violates Penal Code section 654 which prohibits double punishment. The *Austin* case did not deal with the question of double punishment. The inquiry in *Austin* was whether the defendant had "touched" the victim as required for conviction under Penal Code section 288. In failing to distinguish *Austin,* the *Perkins* court created confusion regarding the *Austin* decision. Unfortunately, the *Austin* dissenting opinion suffers the same infirmity. (See 111 Cal.App.3d at pp. 116-120, dis. opn.)

We believe *Austin* was correctly decided and we adopt its holding that the touching required to violate Penal Code section 288 may be by the child of his own person, providing such touching is at the instigation of a person having the requisite specific intent. (111 Cal.App.3d at pp. 115-116.) However, we reach the same destination by means of a route different from that of the *Austin* majority.[6] We hold the children's touching of their own genitalia at the instigation of appellant was a "constructive touching" by appellant himself.

Black's Law Dictionary (4th ed. 1968) defines the term "Constructive" as follows: "That which is established by the mind of the law in its act of *construing* facts, conduct, circumstances, or instruments; that which has not the character assigned to it in its own essential nature, but acquires such character in consequence of the way in which it is regarded by a rule or policy of law; . . ." (*Id.,* at p. 386, italics in original.) Thus, the law will find a *constructive* " 'Bailment,' 'Breaking,' 'Contempt,' 'Contract,' 'Conversion,' 'Delivery,' 'Escape,' 'Fraud,' 'Larceny,' 'Malice,' 'Notice,'

---

[5]*People v. Webb* (1958) 158 Cal.App.2d 537 [323 P.2d 141], also dealt with the question of double punishment and is not relevant to the question decided in *Austin.*

[6]The *Austin* majority held the child victim was the innocent agent of the perpetrator, who as principal, was responsible for the acts of his agent. (111 Cal.App.3d at pp. 114-116.)

'Possession,' 'Seisin,' 'Service of Process,' 'Total Loss,' 'Treason,' and 'Trusts'. . . ." (*Id.*, at pp. 386-387.)

Closely analogous to the "constructive touching" theory by which we find the touching element necessary for conviction under section 288, is the familiar "constructive breaking" by which an essential element of common law burglary is supplied by the courts. Since "there is no common-law burglary without a breaking," the fiction of a "constructive breaking" is used to effectuate the purpose of the law. (See Perkins, Criminal Law (2d ed. 1969) p. 194; 4 Blackstone, Commentaries on the Laws of England (1769) p. 226; 1 Hale, Pleas of the Crown (1778) p. 549.) Thus, "[u]nder certain circumstances the opening of a door by the owner or his servant, having been occasioned by the criminal plan or scheme of the wrongdoer, 'is as much imputable to him as if it had been actually done by his own hands,' and is deemed a constructive breaking." (Perkins, *supra*, p. 194; 3 Wharton's Criminal Law (14th ed. 1980) § 330, pp. 200-201.)

Here, viewed in the light most favorable to the judgment, the evidence establishes that appellant instructed or posed the children in such manner that their hands were caused to be placed upon their own genitalia. These acts of touching are imputable to appellant as if the touching had been actually done by his own hands. It is a "constructive" touching and is perceived as such in the eyes of the law.

Since we hold the *Austin* instruction is a correct statement of the law, appellant would not have been prejudiced by a finding that such genital self-touching by Rainy (count III), Liza (count V), Erika (count VII), and Jason (count X) was a sufficient "touching" by appellant for conviction under section 288. Moreover, there is also sufficient evidence from which the jury could have found that appellant touched each of these four children while removing their clothing prior to photographing them nude.

*IV. The probative value of behavior changes in the children far outweighed the prejudicial effect of the evidence.*

Appellant contends the trial court erred in admitting irrelevant and grossly prejudicial testimony regarding behavioral changes in the children during their attendance at Isabel's Nursery School.[13] The evidence challenged by appellant was introduced through the testimony of the children's mothers. They described their children's unusual behavior during the time

---

[13]Appellant specifically refers in his brief to the testimony of the mothers of Misha (count I), Hannah (count II), Kimberly (count VII), Erika (count VIII), Melissa (count IX), Jason (count X) and Tara (count XI).

they attended Isabel's, including masturbation, bedwetting, nightmares, sex play with other children, "unruly" behavior, complaints of sore "bottoms" and vaginal rashes and redness. The troubled sex-oriented behavior abated when the children were removed from the school.

.Appellant claims the trial court abused its discretion and failed to fulfill its statutory duty under Evidence Code section 352 by failing to weigh the probative value of the evidence against its prejudicial effect before admitting it. Appellant points to that part of the record which shows the court simply ruled it would deny the defense motion to exclude the evidence and failed to engage in the deliberative weighing process mandated by our Supreme Court in *People* v. *Green* (1980) 27 Cal.3d 1, 24 [164 Cal.Rptr. 1, 609 P.2d 468].

In turn, respondent claims the issue of prejudicial error in the admission of the evidence was not preserved for review on appeal because appellant failed to interpose a specific objection pursuant to Evidence Code section 352. Alternatively, respondent urges that because appellant failed to continue to object to that line of questioning by the prosecutor after his objections were twice overruled, he failed to preserve for review the "bulk of the evidence" pertaining to the children's behavioral changes.

Our independent review of the record reveals that defense counsel *did* make a specific and timely objection based on Evidence Code section 352. He interposed that objection when the prosecutor examined Misha's mother, the first of the mothers to testify, and again raised the objection when the prosecutor renewed that line of questioning with Hannah's mother, the second mother to testify on the subject. ██ "It has long been the rule that '[w]here a party has once formally taken exception to a certain line or character of evidence, he is not required to renew the objection at each recurrence thereafter of the objectionable matter arising at each examination of other witnesses; and his silence will not debar him from having the exception reviewed.' [Citation.]" (*People* v. *Antick* (1975) 15 Cal.3d 79, 95 [123 Cal.Rptr. 475, 539 P.2d 43]; *People* v. *Fulks* (1980) 110 Cal.App.3d 609, 615, fn. 5 [168 Cal.Rptr. 203].)

██ The record reveals, however, that the trial court *prima facie* abused its discretion as a matter of law in failing to weigh on the record the probative value of the evidence in resolving a material issue as against the danger of prejudice to appellant. (*People* v. *Green, supra,* 27 Cal.3d at pp. 24-25; *People* v. *Ford* (1964) 60 Cal.2d 772, 801 [36 Cal.Rptr. 620, 388 P.2d 892].) ██ When a section 352 objection is raised, the record must affirmatively show the trial judge did in fact weigh the possibility of prejudice against the probative value of the evidence. (*People* v. *Leonard*

(1983) 34 Cal.3d 183, 188 [193 Cal.Rptr. 171, 666 P.2d 28]; *People* v. *Green, supra,* 27 Cal.3d at p. 25.) ■ However, we do not agree with appellant's claim that had the court properly considered those factors it would have been compelled to conclude the prejudicial effect of the challenged evidence substantially outweighed its probative value.

■ " ' "Section 288 of the Penal Code was enacted to protect children from the lustful advances and tampering of callous and unscrupulous persons as well as from the assaults of depraved unfortunates. In all cases arising under this statute the purpose of the perpetrator in touching the child is the controlling factor and each case is to be examined in the light of the *intent* with which the act was done." ' [Citations.]" (*People* v. *Kingston* (1974) 44 Cal.App.3d 629, 635 [118 Cal.Rptr. 896], italics added.)

■ Here, appellant defended against the charges by introducing evidence that he had no sexual motivation in photographing the children and claimed the pictures were taken for research. Thus, the prosecutor had the burden of proving beyond a reasonable doubt (*People* v. *Worthington* (1974) 38 Cal.App.3d 359, 368 [113 Cal.Rptr. 322]) that appellant did in fact commit the lewd acts upon the children "with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person *or of such child* . . . ." (Pen. Code, § 288, italics added.) This intent may be shown by circumstantial evidence and the jury was so instructed. (*People* v. *Worthington, supra,* 38 Cal.App.3d at p. 368.)

While it is not necessary to proof of the offense that the sexual desires of the child or of both the child and the defendant were actually affected, whether passions were actually aroused is evidence of the *intent* with which the acts were committed. (*People* v. *Cordray, supra,* 221 Cal.App.2d at p. 593; *People* v. *Piccionelli* (1959) 175 Cal.App.2d 391, 394.) The requisite intent may be found from surrounding circumstances. (*People* v. *Cordray, supra,* 221 Cal.App.2d at p. 593; Pen. Code, § 21.)

■ In the instant case the children's behavior, which indicated precocious sexual arousal, was highly probative of the intent with which appellant conducted his secretive and private photography sessions with them. It was circumstantial evidence that appellant was not taking pictures with the objective detachment of the professional photographer or the dedicated researcher, but that he in fact harbored an intent to arouse or gratify the sexual desires of the children, himself, or both. The children's troubled behavior while enrolled at Isabel's was the result of the intensely emotion-charged environment in which the photographs were taken and for that reason it was circumstantial evidence of appellant's lustful intent.

Appellant urges that even if the evidence was relevant, its prejudicial effect far outweighed its probative value because his responsibility for the children's behavioral changes was highly speculative. We do not find the nexus between the picture taking and the children's troubled behavior so tenuous. The changes occurred during the time the children were attending Isabel's and appellant was taking pictures. The unusual behavior abated when they were removed from the school environment and from contact with appellant. Thus, the inference that appellant was responsible for the children's behavioral changes was not based on speculation at all; it was based on a mosaic of credible evidence.

We hold the probative value of the evidence of the children's behavioral changes greatly outweighed its prejudicial impact. Moreover, the exclusion of the evidence would have been an abuse of discretion. Thus, we find any error of the court in failing to do its "weighing" on the record is harmless. (*People* v. *Martinez* (1980) 106 Cal.App.3d 524, 533 [165 Cal.Rptr. 160].)

*V. The "recent complaints" of the children were properly admitted in evidence.*

Appellant contends the testimony of the mothers of Misha (count I), Hannah (count II), Rainy (count III) and Melissa (count IX), regarding their children's statements, was hearsay. Specifically, appellant asserts he was denied a fair trial and his right of confrontation because these hearsay statements established the "touching" element necessary for conviction under Penal Code section 288. Appellant urges the statements were improperly admitted as "recent complaints" because (1) the complaints were not "fresh," (2) only the fact the complaint was made is admissible when the victim does not testify, not the "details" of the complaint, (3) there was no showing the statements were not improperly elicited by questioning, (4) the complaints were irrelevant because the children's state of mind was not in issue.

At the outset we note that Misha, Hannah, and Melissa each complained to her mother that appellant had touched her "bottom" or that he had removed her clothing, or both. Thus, their statements would tend to establish the "touching" element requisite to finding a section 288 violation. Rainy's statement, however, did not mention or imply a touching; it only served to confirm that appellant had taken pictures of her "butt," a fact which appellant never denied. Therefore, only the statements of Misha, Hannah, and Melissa are within the ambit of appellant's complaint on appeal. We hold

their statements were properly admitted by the trial court as "recent complaints."

■ In prosecutions for sex offenses, proof of the fact of recent complaints by a minor victim is admissible as original evidence and is *not hearsay*. (*People* v. *Adams* (1939) 14 Cal.2d 154, 158 [93 P.2d 146]; *People* v. *Nankervis* (1960) 183 Cal.App.2d 744 [7 Cal.Rptr. 263].) "[I]f the statement was only admitted to show that a complaint was made by the victim rather than to show the truth thereof, then the evidence is *not hearsay* at all. [Citations.]" (*People* v. *Butler* (1967) 249 Cal.App.2d 799, 804 [57 Cal.Rptr. 798], italics added.)

The "recent complaint" doctrine admits testimony by third persons that the victim complained of a sex act by the defendant on the ground that "[i]t is natural to expect that the victim of such a crime would complain of it, and the prosecution can show the fact of complaint to forestall the assumption that none was made and that therefore the offense did not occur." (*People* v. *Burton* (1961) 55 Cal.2d 328, 351 [11 Cal.Rptr. 65, 359 P.2d 433]; *People* v. *Brown* (1973) 35 Cal.App.3d 317, 323-324 [110 Cal.Rptr. 854]; see *People* v. *Belasco* (1981) 125 Cal.App.3d 974, 981 [178 Cal.Rptr. 461], cert. den. *Belasco* v. *California* (1982) 456 U.S. 979 [72 L.Ed.2d 856, 102 S.Ct. 2249]; *In re Marianne R.* (1980) 113 Cal.App.3d 423, 427 [169 Cal.Rptr. 848]; *People* v. *Panky* (1978) 82 Cal.App.3d 772, 779 [147 Cal.Rptr. 341].)

■ Here, as in *People* v. *Brown, supra,* 35 Cal.App.3d 317, "[t]he testimony was properly admitted for this purpose, the trial court [each time] explaining to the jury that the statement was admitted into evidence only to show that it was made, and not for the truth of its content." (*Id.*, at p. 324.) Moreover, the jury was instructed pursuant to CALJIC No. 2.09 that evidence admitted for a limited purpose could only be considered for that purpose.

■ In *Brown,* the court observed that the "complaint doctrine" in sex cases is distinct from the spontaneous declaration exception to the hearsay rule. (*Id.*, at p. 323; *People* v. *Butler, supra,* 249 Cal.App.2d at pp. 804-805.) Thus, a short delay in making a complaint affects only the weight of the testimony and not its admissibility. (*People* v. *Brown, supra,* 35 Cal.App.3d at p. 324; see *People* v. *Banos* (1962) 209 Cal.App.2d 754, 758 [26 Cal.Rptr. 127]; *People* v. *Staggs* (1960) 180 Cal.App.2d 578, 580 [4 Cal.Rptr. 587]; *People* v. *Bianchino* (1907) 5 Cal.App. 633, 636-637 [91 P. 112].) ■ Here, contrary to appellant's contention, the children's

complaints were sufficiently "fresh" to be admissible on the theory they were "recent complaints." If there was any delay by the children in making their complaints, we believe it was of an acceptably short duration. The fact that the latest picture of each of the three children was taken approximately one month prior to the child's complaint to her mother supports our conclusion. Moreover, since Misha, Hannah and Melissa were exposed to appellant on almost a daily basis, it would be unreasonable to expect that they, being of such tender years, could pinpoint with precision the exact date of the offenses of which they complained.

Equally unmeritorious is appellant's contention that since the children did not testify, "details" of their complaints were improperly admitted in evidence. Appellant's reliance on *People* v. *Orduno* (1978) 80 Cal.App.3d 738 [145 Cal.Rptr. 806], for that proposition is misplaced. Although the exact implication of *Orduno* in this regard is unclear, the court's pronouncements regarding the recent complaint doctrine is dictum; the *Orduno* court determined the child's statements were admissible as spontaneous declarations and abruptly terminated its discussion of the "recent complaints" doctrine.

More importantly, however, the *Orduno* court failed to mention or acknowledge *People* v. *Burton, supra,* 55 Cal.2d 328, our Supreme Court's most recent holding on this subject. In *Burton,* the court stated: "We agree with the reasoning of those cases which point out that testimony to the bare fact that the victim 'made a complaint' as to an unspecified subject matter on its face would be meaningless; . . . *We therefore accept the view that although details cannot be recounted, it can be shown by the People 'that the complaint related to the matter being inquired into, and not a complaint wholly foreign to the subject'* [citation]; *that is, the alleged victim's statement of the nature of the offense and the identity of the asserted offender, without details, is proper."* (*Id.,* at pp. 351-352, italics in original; *People* v. *Crume* (1976) 61 Cal.App.3d 803, 813-814 [132 Cal.Rptr. 577].)

It is apparently appellant's position that *Burton* is not applicable to this case because the complaining child victims did not testify. In *Burton* the victim testified at trial. We do not agree with so limited a view of the *Burton* holding.

While it is generally true that evidence a complaint was made is inadmissible where the prosecutrix does not take the stand, an exception is made where, as in the present case, the child is too young to testify. (*People*

v. *Orduno, supra,* 80 Cal.App.3d at p. 741; *People* v. *Nankervis, supra,* 183 Cal.App.2d at p. 747; *People* v. *Wade* (1960) 181 Cal.App.2d 314, 315-316 [5 Cal.Rptr. 63]; *People* v. *Hubbell* (1942) 54 Cal.App.2d 49, 64 [128 P.2d 579]; see *People* v. *Guldbrandsen* (1950) 35 Cal.2d 514, 520-521 [218 P.2d 977].) In cases such as this, testimony as to the complaint may be given by the person to whom such complaint was made. (*People* v. *Figueroa* (1901) 134 Cal. 159, 162 [66 P. 202]; *People* v. *Hubbell, supra,* 54 Cal.App.2d at p. 64; *People* v. *Bianchino, supra,* 5 Cal.App. at p. 636.)

■ With the possible exception of *Orduno,* no case which postdates *Burton* has held, or even hinted, that where a child victim does not testify, the person recounting the victim's recent complaint can state *only* that the victim "'made a complaint.'" (*People* v. *Burton, supra,* 55 Cal.2d at p. 351.) Therefore, inasmuch as the testimony of the mothers regarding their children's complaints was strictly limited to "the nature of the offense and the identity of the asserted offender, without details" (*ibid.,* italics omitted), their testimony was entirely proper.

Finally, we have determined that appellant's other contentions regarding the children's complaints also lack merit. The record clearly shows the statements of Misha, Hannah and Melissa were made spontaneously and were not made in response to questioning. Further, the children's complaints were not irrelevant merely because the children's state of mind was not in issue; the statements were admitted to show the complaints were in fact made. Lastly, the admission of the statements did not violate appellant's right to confront his accusers; the statements were not hearsay since they were not admitted for the truth of the facts contained therein.

Moreover, even if the complaints of Misha, Hannah and Melissa were erroneously admitted in evidence, we are convinced after a review of the entire record in this cause that it is not reasonably probable a result more favorable to appellant would have been reached in the absence of such alleged error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Further, we find beyond a reasonable doubt that admission of the evidence did not produce a miscarriage of justice. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *People* v. *Orduno, supra,* 80 Cal.App.3d at p. 750.) There was evidence from which the jury could have concluded that appellant had touched Misha, Hannah and Melissa while removing their clothing. The jury apparently found that sole evidence of touching sufficiently convincing when it found appellant guilty of lewd conduct with Rainy (count III) and Aaron (count IV). Moreover, the photographs of Melissa (count IX) most vividly show appellant touched her.

## DISPOSITION

The judgment is reversed and remanded for the limited purpose of resentencing in accordance with the principles expressed herein. In all other respects, the judgment is affirmed.

Klein, P. J., and Lui, J., concurred.

A petition for a rehearing was denied March 22, 1984, and appellant's petition for a hearing by the Supreme Court was denied May 24, 1984.