[No. F009182. Fifth Dist. Aug. 19, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES FAIR, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

## COUNSEL

Raymond L. Girard, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Maureen Daly and Laura Heidt, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### HAMLIN, J.—

### STATEMENT OF THE CASE

Appellant, James (Sonny) Fair, was charged with lewd and lascivious conduct with a child under the age of 14 in violation of Penal Code section 288, subdivision (a). It was also alleged that he occupied a position of special trust and committed an act of substantial sexual conduct within the meaning of Penal Code section 1203.066, subdivision (a)(9). A jury found appellant guilty as charged and found true the allegations that he occupied a position of special trust and committed an act of substantial sexual conduct (§ 1203.066 allegations). Appellant appeals from the judgment on the jury verdict, contending the trial court erred prejudicially in admitting evidence of the victim's out-of-court statements to others under the doctrine of "fresh complaint" and in denying his Penal Code section 1118.1 motion for acquittal on the section 1203.066 allegations. We find appellant's contentions meritless and affirm the judgment.

### STATEMENT OF FACTS

Appellant was the live-in boyfriend of Janet B. He and Janet shared a home with Janet's two sons, Kwami, age ten, and Cecil, age five. At about 5:40 a.m. on November 15, 1986, Janet's sister, Diane, came by Janet's house to give Janet a ride to work and to drop off Diane's seven-year-old daughter, Letishia. Diane had arranged for Letishia to stay with appellant and Janet's two sons while she and Janet were at work that day.

Letishia lay down on the couch after Janet and her mother left for work. Appellant called Letishia into the bedroom and told her to lie down on the bed next to him. He placed his arm across her body, took her hand and placed it on his penis. He then pulled down her pants, began rubbing her vaginal area and inserted part of his hand or fingers into her vagina, hurting her.[1] Letishia began to cry and appellant told her that he was "showing her the future of life."

She managed to wiggle away and returned to the living room to lie on the couch briefly. She then went into the bedroom to wake her cousins, Kwami and Cecil. She was able to awaken the younger boy, Cecil, but unable to awaken Kwami. She returned to the living room and wrote a note that

---

[1] At the preliminary hearing, Letishia said that this went on for about two minutes. At trial, she testified that it went on for about 10-20 minutes.

stated, "Sonny made me touche [*sic*] his dick. He touched my pussy. Don't tell. No. That's what he told me." When Kwami woke up she gave him the note which he read and returned to her. She hid the note in a hole in a mattress for fear that appellant would get mad at her. Later that same day appellant told Letishia that if she told anyone what had happened they would take her to a hospital and stick a tube in her.

Letishia's mother picked her up at about 2:15 that afternoon. Later that same day as Letishia and her mother were returning to Janet's house, her mother began asking Letishia who had been "messing with her."[2] Letishia responded that she would tell if her mother promised not to "whup" her and then told her mother that it was appellant. The police were notified and Letishia was taken to the San Joaquin Hospital where she was examined by a Dr. David DeHaas. Dr. DeHaas found no signs of hymenal tears or deep vaginal touching but noted some redness which, according to his testimony, is consistent with vaginal touching or penetration as well as many other things such as irritation from harsh soap, or sliding off slides or swings or furniture.

Appellant was arrested that evening. The note was discovered, crumpled in a ball, between the mattresses in one of the bedrooms in Janet's house.

## DISCUSSION

I. *Did the trial court commit reversible error in admitting testimony and evidence of Letishia's out-of-court statements to others under the doctrine of "fresh complaint"?*

■ In prosecutions for sex offenses, proof of complaints made by a minor victim through testimony of third persons is admissible under the "fresh" or recent complaint doctrine. (*People* v. *Meacham* (1984) 152 Cal.App.3d 142, 158 [199 Cal.Rptr. 586].) These complaints are allowed into evidence under the theory that they are only admitted to show that a complaint was made by the victim, and not for the truth of the matter stated. (*In re Cheryl H.* (1984) 153 Cal.App.3d 1098, 1128-1129 [200 Cal.Rptr. 789].) Thus, the evidence is not hearsay. (*People* v. *Clark* (1987) 193 Cal.App.3d 178, 181 [238 Cal.Rptr. 230].) The rationale of this doctrine is that "[i]t is natural to expect that the victim of such a crime would complain of it, and the prosecution can show the fact of complaint to forestall the assumption that none was made and that therefore the offense did not occur." (*People* v. *Burton* (1961) 55 Cal.2d 328, 351 [11 Cal.Rptr.

---

[2] Letishia had been having problems with a boy at school who had been "messing with her."

65, 359 P.2d 433].) In order to qualify as a fresh complaint, the statements of the victim must have been volunteered within a reasonable time after the sex offense. (*In re Cheryl H., supra,* at p. 1129.)

Appellant contends that the trial court committed reversible error by admitting into evidence under the fresh complaint doctrine the note written by Letishia and the testimony of Letishia's mother, Letishia's cousin, Kwami, and Dr. DeHaas regarding Letishia's statements to them of what appellant had done to her.

### A. *The testimony of Letishia's cousin, Kwami, and the note.*

Appellant's challenge to the admissibility of Letishia's out-of-court statement to her cousin and her note is twofold. In the first instance he asks this court to reassess the viability of the fresh complaint doctrine. Second, he contends that Letishia's statement to Kwami and her note are not truly complaints, but merely secrets and not within the ambit of the fresh complaint doctrine.

Appellant bases his first argument on Jefferson's critical assessment of the fresh complaint doctrine. (1 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 2d ed. 1982) § 1.1, p. 12.) The essence of Jefferson's criticism is that admitting a third party's testimony as nonhearsay on the fresh complaint theory "permits the rebuttal of a defense theory [that no complaint was made because no offense occurred] before any such theory has been advanced." (*Ibid.*) Jefferson also expresses concern that "evidence of a sex victim's complaint will necessarily be used by the jury as *hearsay*—as proof of the truth of the hearsay statement that defendant was the perpetrator of the offense." (*Ibid.*) However, the danger that there will be a miscarriage of justice as a result of such use is not significant when, as in this case, the complainant testifies at trial. (See Scott, *California's Dormant Hearsay Exception: Section 1200(b) of the Evidence Code* (1983) 23 Santa Clara L.Rev. 157, 162-167.)

The scope of the admissible fresh complaint was defined by our Supreme Court in *People* v. *Burton, supra,* 55 Cal.2d at pages 351-352: "We therefore accept the view that although details cannot be recounted, it can be shown by the People 'that the complaint related to the matter being inquired into, and not a complaint wholly foreign to the subject' [citation]; that is, the alleged victim's statement of the nature of the offense and the identity of the asserted offender, without details, is proper. [Citations.]" (Italics omitted.) Both Letishia's out-of-court statement to her cousin and her note constitute admissible fresh complaints under the quoted rule.

Appellant's second argument is that "the note and its contents . . . do not bear the imprint of a protest or outcry, or of an accusation," but were merely "the simple expression and communication of a 'secret,' and not a complaint at all." It would not be unreasonable to infer that Letishia wished the note and its contents to be kept a secret. Such an inference is consistent with being told not to tell anyone and her act of hiding the note out of fear either that appellant would be mad at her or that she would be taken to a hospital and have tubes stuck in her if she told. But even if we consider the note as an attempt to communicate a secret, that in no way detracts from Letishia's intent to communicate what had happened to her that morning. It becomes no less of a fresh complaint by reason of her lack of desire to communicate her message to all.

Respondent notes that appellant does not identify what statements made by Letishia to Kwami he claims to be inadmissible hearsay, but assumes that appellant is referring to Kwami's testimony on redirect examination that appellant warned Letishia not to tell or a "doctor would stick a tube up her leg." This appears to be the only possible statement to which such an objection could apply. Respondent concedes that this testimony was erroneously admitted as a fresh complaint since it encompasses more than the nature of the offense and the identity of the offender (*People* v. *Burton, supra,* 55 Cal.2d at pp. 351-352), but argues that this testimony was properly admissible as a prior consistent statement.

Evidence of a prior consistent statement is not made inadmissible by the hearsay rule if it is offered to rebut evidence of a subsequent inconsistent statement, or an express or implied charge of recent fabrication or bias or other improper motive. (Evid. Code, §§ 791, 1236.) On direct examination Letishia testified that appellant had warned her that she would be taken to a hospital and have a tube stuck in her if she revealed that she had been molested. On cross-examination defense counsel asked Letishia if she had told the police of this threat. She testified that she had forgotten to tell the police. Thus, the inference was that her statement at trial was fabricated after she spoke with the police. Kwami was recalled thereafter and testified as to Letishia's prior consistent statement.

Since the evidence was admissible as a prior consistent statement, the fact that it was erroneously admitted under the theory of fresh complaint does not render admission of the evidence error. (*Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

### B. *The testimony of Dr. DeHaas.*

Prior to the testimony of Dr. DeHaas, defense counsel sought to exclude his testimony regarding the details of the acts described by Letishia.[3] Appellant's counsel argued below that the statements made to the doctor by Letishia were simple hearsay and prejudicial; the prosecution contended that the doctor would merely be testifying as to the basis for his opinion.

The trial court resolved the issue as follows:

"THE COURT: Can't we accomplish the same thing, Mr. Shumaker [prosecutor], by simply having the doctor testify that he did take a history and that that history indicated that the child was the possible victim of child, some form of sexual abuse consisting of vaginal touching, possible vaginal penetration without going into any further details?

"MR. SHUMAKER: Yes. I'm not sure that that takes away much from what the doctor actually did. I have no problem with that.

"THE COURT: What it does, I think is, solves the problem of a further complaint by the victim, herself, with details and with identification of the alleged perpetrator and so forth. And I think that with what we have thus far, we certainly have gotten, I think, accomplished the evidence to establish a fresh complaint and the lack of a non-complaint situation.

"I would feel more comfortable, and I think that it would be more appropriate if the doctor simply testifies that he took a history, and it indicated that the child was the possible victim of a some form of sexual abuse, consisting of vaginal touching, possible vaginal penetration. Leave it at that. Then let him testify as to what his findings were on his gross examination and that should accomplish, you know, should get the evidence in that we need without adding to it a further statement by the victim about what, you know, what exactly happened and particularly the identification of the defendant.

"I think under 352 that we have got more than enough evidence from other sources to ward off the implication or argument that the incident didn't happen because she didn't complain about it in a timely fashion."

---

[3] The details as told by Letishia were recorded in the doctor's notes as follows: " 'Mommy dropped me off at aunty's house, the boyfriend called her into the bedroom, she went in, told me to lay [*sic*] down, he made me put my hands on his privates, he put his hands on my privates after he pulled my pants down, put hands on inside. I started crying.' " This was not presented to the jury.

Thereafter Dr. DeHaas testified in pertinent part as follows:

"Q. [By prosecutor] Okay. Directing your attention to the 15th of November, 1986, did you have occasion to examine a young female patient identified as Letishia W.?

"A. [Dr. DeHaas] Yes, I did.

"Q. Who was present at the time that you examined this individual?

"A. The patient's mother was there and one of the nurses over at San Joaquin Hospital.

"Q. Prior to your examination, did you take a history from the patient?

"A. Yes, I did.

"Q. Did that history include a description by her of a vaginal touching, possibly penetration, digital or finger penetration?

"A. Yes, it did."

■ Appellant insists that the foregoing was admitted under the fresh complaint doctrine. Citing *In re Cheryl H., supra,* 153 Cal.App.3d at pages 1128-1129, appellant contends that the out-of-court statements made to Dr. DeHaas were inadmissible under the fresh complaint doctrine since they were neither fresh nor volunteered. Respondent contends that the testimony was admissible to explain to the jury the basis of the doctor's opinion. Appellant's contention that the foregoing testimony of Dr. DeHaas was erroneously admitted as a fresh complaint is meritless.

It appears from the record that the trial court did not admit the challenged testimony on the basis that it fell into the ambit of a "fresh complaint." The doctor was not permitted to repeat the statements made to him by Letishia, but merely stated that he had obtained a history from the child that indicated she may have been the victim of molestation. Thus, appellant's challenge to this testimony fails for the simple reason that the testimony does not constitute hearsay; it was not offered for the truth of the child's statement that she had been molested, but merely as the basis upon which Dr. DeHaas conducted his examination of Letishia. For this reason, *In re Cheryl H.* is inapposite.

*In re Cheryl H., supra,* 153 Cal.App.3d 1098, concerned several challenges to a psychiatrist's testimony regarding her conclusion that the child

had been sexually abused and that the father had committed the abuse. It was held that (1) the doctor could properly base her opinion that the child had been sexually abused upon her observations and statements of the child during play therapy (*id.,* at pp. 1117-1118); (2) the opinion that the child's father had committed the sexual abuse was inadmissible expert testimony (*id.,* at pp. 1118-1126); and (3) the child's out-of-court statements to the doctor that her father had molested her were inadmissible under the fresh complaint doctrine (*id.,* at pp. 1128-1131). The court did not directly address the issue before this court; that is, whether and to what extent an examining physician may testify regarding the history provided by the patient which guided his examination and therefore was, at least in part, the basis for his expert opinion. However, there is instructive dicta.

In discussing the admissibility of a psychiatrist's opinion testimony, based upon the out-of-court declarations of the child victim, that the father had molested the child, the court engaged in the following analysis: "This limitation on the scope of expert opinion testimony is illustrated by the holding in *Johnson* v. *Aetna Life Ins. Co.* (1963) 221 Cal.App.2d 247, 252 [34 Cal.Rptr. 484] . . . . The patient in that case had told a doctor the cause of his seriously injured foot was a 'slip and fall' much as Cheryl told Dr. Powell Mr. H. was the one who sexually abused her. This slip and fall statement was included in the hospital records but the trial court refused to admit that part of the records. The Court of Appeal upheld this ruling:

" 'Statements made by a patient to his surgeon respecting the cause of an injury, when declared by the latter to be necessary to enable him to form an opinion as to the nature of the injury, and constituting in part the basis for his conclusion respecting such, are admissible to show the basis for the surgeon's conclusion in the premises, *but not for the purpose of establishing the truth of the facts contained therein.* [Citation.]

" 'The statements in the case at bar were irrelevant to the issue at hand; would not have been admissible if offered as a part of the testimony of the attending physician [citations]; were not made admissible merely by their inclusion in the hospital records [citations]; and properly were excluded.' [Citation.]

"Since the patient's out-of-court statement that his injury was caused by a slip and fall is inadmissible as evidence he actually slipped and fell, a fortiori, the physician would not be allowed to offer an opinion based on that same hearsay statement to the effect that the patient slipped and fell. He can accept the statement's truth and use it as part of the raw material for reaching an opinion about an entirely different issue, in this case his diagnosis of the nature of the patient's injuries. But he should not be

permitted to render an opinion asserting the truth of the matter stated in the hearsay statement any more than that statement itself can be used to establish 'the truth of the facts contained therein.'

"Applying the *Johnson* holding to the facts of the instant case, it is apparent Dr. Powell's opinion about who caused Cheryl's sexual injuries is not admissible. Cheryl's statement that her father sexually abused her, even if necessary to the psychiatrist's opinion about the *nature* of her injuries, that is, that they were the result of sexual abuse by someone, could only be introduced for the limited purpose of supporting *that opinion*. The statement could not be used to establish who caused the injury nor to support an opinion that a certain individual was responsible." (*In re Cheryl H., supra,* 153 Cal.App.3d at pp. 1120-1121, italics in original.)

The doctor's testimony in the present case did not relate the details of Letishia's out-of-court statement but merely concerned the nature of the possible injuries to guide him in his examination and expert opinion. The testimony was admissible for this limited purpose.[4]

C.  *The testimony of Letishia's mother.*

Appellant challenges the admission of Letishia's statement to her mother under the fresh complaint doctrine because the statement was elicited, not voluntary.[5] There is merit to this claim of error. In order to qualify under the fresh complaint doctrine, the out-of-court statement must truly be in the nature of a complaint and not in response to questioning. (*In re Cheryl H., supra,* 153 Cal.App.3d at p. 1129; *People v. Clark, supra,* 193 Cal.App.3d at pp. 181-182.) However, it is not reasonably probable that a result more favorable to appellant would have resulted in the absence of the erroneously admitted testimony. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

As discussed earlier, the purpose of the fresh complaint doctrine is to preclude the defense from inferring that if no complaint was made the offense did not occur as the victim said it occurred. The practical effect of the doctrine is to prevent the defense from challenging the child's credibility on the basis that no complaint was made at a time when it would have been

---

[4] Given the dialogue between the judge and trial counsel, it seems clear that the doctor's testimony was admitted for this limited purpose; however, there was no limiting instruction. None was requested, and the trial court was under no duty to instruct the jury sua sponte as to such limited purpose. (Evid. Code, § 355; *People v. Richards* (1976) 17 Cal.3d 614, 618-619 [131 Cal.Rptr. 537 [552 P.2d 97]; *Grimshaw v. Ford Motor Company* (1981) 119 Cal.App.3d 757, 789 [174 Cal.Rptr. 348].)

[5] Respondent concedes error, but argues that the error was not prejudicial.

the natural thing to do. In this case, two out-of-court declarations of the complaining victim were properly admitted. It is not reasonable to believe that the admission of a third out-of-court statement added in any significant degree to Letishia's credibility or that the exclusion of that statement would have detracted from her credibility.

II.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment is affirmed.

Martin, Acting P. J., and Best, J., concurred.

A petition for a rehearing was denied September 12, 1988.

---

\* See foonote, *ante,* page 1303.