Filed 11/20/15  P. v. James CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHARLES D. JAMES,<br><br>    Defendant and Appellant. | B257226<br><br>(Los Angeles County<br>Super. Ct. No. MA058249) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa M. Chung, Judge.  Affirmed.

John A. Colucci, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., Joseph P. Lee and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Charles D. James appeals from his conviction on several counts arising from the sexual assault of a 14-year-old girl, who was referred to as "Jane Doe" throughout the proceedings. Appellant argues the court committed reversible error by admitting the victim's statements to an examining nurse, even though the victim testified at trial. We disagree and affirm.

**FACTS**

On December 13, 2012, around 6:00 a.m., Jane Doe left her apartment in Lancaster and began walking to her high school. At one point, she noticed a man following her. She crossed the street and began to run. The man ran up behind her, grabbed her, and as she screamed, told her, "Be quiet or I will kill you." Jane Doe struggled to get away while the man pushed her into some bushes and against a brick wall behind the bushes. He held her from behind so that she was facing the brick wall. The man asked her, "Do you have dick on your mind this morning?" and, "Have you ever had it before?" Then the man pulled down her shirt and bra and licked her left breast. The man proceeded to pull down her jeans and underwear and unbuckle his pants. As he unbuckled his pants, Jane Doe was able to turn her head and look at the man. He was black, had facial hair, and had braided or pulled-back hair on his head. He used his finger to feel around her anus and then forcibly inserted his penis into her anus approximately three times. At this point he stopped and said, "If you tell anybody, then I'll kill you and your family," pushed her to the ground, and fled.

After the man fled, Jane Doe ran in the opposite direction and sought help. She ran into classmates and used one of their cell phones to call her mother, who did not answer. She fainted and when she regained consciousness, she called 911, and deputy sheriffs arrived on the scene shortly thereafter.

Forensic nurse examiner Sylvia Fink examined Jane Doe at Antelope Valley Hospital on the morning of the assault. Based on Jane Doe's account, Fink collected various swab samples from the victim, including from her left breast, her buttocks, the crack of her buttocks, and her rectum. Fink also took photographs, which showed abrasions in Jane Doe's rectal area at three different locations around the anus.

Senior criminalist Kenneth Takigawa conducted the DNA testing on the contents of Jane Doe's sexual assault kit from Fink's examination. He detected saliva on the left breast swab sample. The DNA profile from the breast saliva sample was uploaded into a database and returned a match to appellant. In addition, Takigawa identified semen and sperm cells on Jane Doe's rectal swab sample and determined that the sample contained a mixture of DNA from at least two contributors. He could not conclusively include or exclude appellant as one of those contributors.

All the testing in Takigawa's lab underwent peer review as a matter of course. Wilson Vong reviewed Takigawa's work in this case. Vong did not find any errors in Takigawa's testing, but he would have included appellant as a possible contributor to the DNA in Jane Doe's rectal sample. Takigawa then forwarded the rectal sample to another criminalist, Cindy Carrol, for a different type of testing that could possibly remove ambiguity from the sample. Carrol performed a type of DNA testing specific to the "Y" chromosome found only in males. Y-profiles are not unique to individuals, like the profiles generated in the conventional testing Takigawa did. But Y-profiles are unique to paternal lines. A male will have the same Y-profile as other males in his paternal line. The Y-profile generated from Jane Doe's rectal sample matched appellant's Y-profile. Although the rectal sample's Y-profile would also match any male within appellant's paternal line, 99.95 percent of unrelated African-Americans selected at random would be excluded from the sample. Carrol also reviewed Takigawa's work and disagreed with his inconclusive finding regarding the rectal sample. She would have included appellant as a contributor to that sample as well.

Once investigators identified appellant as a suspect based on the DNA match, they notified the media of his identity. A phone tip from an individual purporting to be appellant's uncle led police to arrest appellant in Greenville, South Carolina. Investigators discovered that before travelling to South Carolina, appellant had been staying in Lancaster less than half a mile from the location of Jane Doe's assault. They searched the location and found a piece of luggage in the garage that contained a traffic citation issued to appellant.

3

A few weeks after the December 2012 assault, investigators showed Jane Doe a photographic lineup that included appellant's Department of Motor Vehicles photograph from February 2009. She could not be sure appellant was her attacker from the photographic lineup. In a photo taken by law enforcement in South Carolina on December 27, 2012, appellant's hair appeared to be fully combed out. In appellant's booking photograph from California on January 5, 2013, it appeared that one portion of his hair was braided and the rest was loose. At trial, Jane Doe identified appellant as her attacker and expressed certainty in that identification.

## PROCEDURE

An amended information charged appellant with kidnapping to commit sodomy (Pen. Code, § 209, subd. (b)(1)),[1] kidnapping to commit forcible acts of sexual penetration (§§ 209, subd. (b)(1), 289, subd. (a)), attempted sexual penetration by a foreign object of a minor over 14 years old (§§ 289, subd. (a)(1)(C), 664), sodomy by use of force of a victim over 14 years old (§ 286, subd. (c)(2)(C)), lewd act upon a child (§ 288, subd. (c)(1)), and dissuading a witness by force or threat (§ 136.1, subd. (c)(1)). The amended information also contained a number of special allegations.

The prosecution dismissed the count for kidnapping to commit forcible acts of sexual penetration. The jury convicted appellant of the remaining counts and found the special allegations to be true. Appellant admitted one prior serious felony conviction within the meaning of section 667, subdivision (a)(1), and one prior strike within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). The court sentenced appellant to an aggregate term of 82 years to life in state prison.

## DISCUSSION

Appellant challenges Fink's testimony regarding the details of the assault as recounted by Jane Doe to Fink. Fink said it was important to learn exactly what happened to the patient so that she could determine what steps to take in the examination.

---

[1] Further undesignated statutory references are to the Penal Code.

According to Fink, Jane Doe told her that the attacker pulled down her shirt and "kissed and licked" her left breast and put his finger and penis in her anus.  Fink opined that her physical findings were consistent with the history Jane Doe gave her.  The court admonished the jury that any alleged statements from the victim through Fink were "not to be considered for the truth," and they were "only to give a context as to what this witness performed next in the examination."  Appellant contends Jane Doe's statements through Fink were inadmissible hearsay and also represented a confrontation clause violation under the Sixth Amendment and the California Constitution.  We reject this challenge.

## 1.  *Confrontation Clause Challenge*

First, this case does not present a confrontation clause violation.  The Sixth Amendment's confrontation clause, applicable in state prosecutions through the Fourteenth Amendment to the United States Constitution, and California's constitutional confrontation clause guarantee a criminal defendant the right to confront, i.e., cross-examine, the prosecution's witnesses.  (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *Chambers v. Mississippi* (1973) 410 U.S. 284, 295; *People v. Herrera* (2010) 49 Cal.4th 613, 620-621.)  *Crawford v. Washington* (2004) 541 U.S. 36, 59, footnote 9 (*Crawford*), made clear, however, that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his [or her] prior testimonial statements.  [Citation.]  . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."  Here, Jane Doe was present, testified at trial, and submitted to cross-examination.  Thus, the admission of her prior out-of-court statements through Fink did not violate the confrontation clause. (*People v. Martinez* (2005) 125 Cal.App.4th 1035, 1050.)

## 2.  *Hearsay Challenge*

Second, the trial court did not abuse its discretion in admitting the challenged evidence for its nonhearsay purpose, and even if it did, the error was not prejudicial.  As a preliminary matter, we dispose of respondent's argument that appellant forfeited a challenge on state hearsay grounds because he based his objection on *Crawford* in the

5

trial court. When defense counsel initially challenged this evidence below, she stated, "I would object under *Crawford*," but also, "That is hearsay." The prosecutor then argued, "I don't believe that that is hearsay," and asserted the evidence fell under the hearsay exception for statements made to medical professionals.[2] Later when the parties again argued this issue, defense counsel contended that, under *Crawford*, the challenged evidence was "testimonial and therefore hearsay and inadmissible." The prosecutor responded in part by arguing the evidence was admissible under the hearsay exception for statements of then existing mental or physical state under Evidence Code section 1250.

"An objection is sufficient if it fairly apprises the trial court of the issue it is being called upon to decide. [Citations.] In a criminal case, the objection will be deemed preserved if, despite inadequate phrasing, the record shows that the court understood the issue presented." (*People v. Scott* (1978) 21 Cal.3d 284, 290.) We think it clear appellant's challenge presented both the confrontation clause and hearsay issues for the court to decide. Appellant did not forfeit the hearsay argument.

Moving to the merits of the hearsay challenge, hearsay is evidence of an out-of-court statement offered to prove the truth of the matter stated. (Evid. Code, § 1200, subd. (a).) "'Under this definition, as under existing case law, a statement that is offered for some purpose other than to prove the fact stated therein is not hearsay.'" (*People v. Bolden* (1996) 44 Cal.App.4th 707, 714.) An extrajudicial statement offered for nonhearsay purposes must still be relevant in that capacity to be admissible. (*People v. Lucero* (1998) 64 Cal.App.4th 1107, 1109-1110.) We review the court's ruling on the admissibility of evidence challenged on hearsay grounds for abuse of discretion. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1007-1008.)

---

[2] The prosecutor appeared to rely on Evidence Code section 1253, which outlines an exception to the hearsay rule for statements made for purposes of medical treatment. But the exception applies only when the declarant was the victim of child abuse or neglect and was under the age of 12 when making the statements. (Evid. Code, § 1253.) Jane Doe was 14 at the time of her statements, and the exception therefore does not apply.

In this case, the court's comments to the jury suggest the court admitted Jane Doe's statements through Fink for a nonhearsay purpose—i.e., not to prove their truth, but to explain Fink's actions in conducting the examination. Respondent advances that rationale on appeal and insists Jane Doe's hearsay statements were necessary to explain why Fink examined Jane Doe in the manner that she did. Appellant argues this rationale fails because the parties did not dispute the form of the examination. The jury only needed to know what tests Fink conducted and the results of those tests, not the reasons *why* she conducted those particular tests. In other words, there was no relevance to Jane Doe's out-of-court statements, if they were not admitted for their truth, but to explain Fink's conduct. (Evid. Code, § 210 ["'Relevant evidence' means evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."].)

In *People v. Fair* (1988) 203 Cal.App.3d 1303 (*Fair*), the court held that a doctor's testimony about the nature of injuries to a victim of child molestation was admissible for the limited purpose of explaining the doctor's examination and the basis for his opinion. (*Id.* at pp. 1311-1313, abrogated on another ground by *People v. Brown* (1994) 8 Cal.4th 746, 763.) The trial court permitted the doctor to testify that he took a history from the victim prior to his examination, and when the prosecutor asked whether "'that history include[d] a description by her of a vaginal touching, possibly penetration, digital or finger penetration,'" the doctor responded in the affirmative. (*Fair*, at p. 1311.) The doctor opined that the results of his examination were consistent with vaginal touching or penetration. (*Id.* at p. 1307.) The appellate court found no hearsay error because the doctor's testimony "did not relate the details of [the victim's] out-of-court statement but merely concerned the nature of the possible injuries to guide him in his examination and expert opinion." (*Id.* at p. 1313.)

In light of *Fair*, we cannot find an abuse of discretion in this case. Fink's testimony provided more detail than the doctor's in *Fair*. She testified that Jane Doe said her attacker "kissed and licked" her left breast and put his finger and penis in her anus, as opposed to stating in more general terms that the history Jane Doe related included

7

mouth-to-breast contact and anal penetration.  Even so, *Fair* provides an apt analogy. Fink's opinion that her physical findings were consistent with Jane Doe's history was based on Jane Doe's statements.  Thus, Jane Doe's statements were admissible not as proof of the facts stated, but to enable Fink to explain the results of her examination and her opinion.  (*People v. Ainsworth* (1988) 45 Cal.3d 984, 1012.)

More importantly here, assuming the court erred, the error was not prejudicial. Appellant argues the purported hearsay error violated his constitutional right to due process, in which case we must judge the prejudicial effect of the error under the "harmless beyond a reasonable doubt" standard of *Chapman v. California* (1967) 386 U.S. 18, 24.  But "generally, violations of state evidentiary rules do not rise to the level of federal constitutional error" (*People v. Benavides* (2005) 35 Cal.4th 69, 91), and we judge them under *People v. Watson* (1956) 46 Cal.2d 818, 836, by asking whether it is reasonably probable the defendant would have obtained a more favorable result in the absence of the error.  Under either standard, the purported error was harmless.  Jane Doe's in-court testimony, which we summarized in the "Facts" section above, contained far more detail about her assault than the little related through Fink.  Her testimony was also consistent with what came in through Fink.  Thus, excluding the challenged testimony would have had no effect whatsoever on the evidentiary landscape.  Moreover, there was no genuine dispute about the details of the attack.  Appellant's defense did not focus on what happened during the attack.  Rather, he contended that he was misidentified as the attacker and focused on alleged weaknesses in the DNA evidence and how his appearance differed from the descriptions Jane Doe gave of her attacker.  As defense counsel said in opening statement:  "There is not going to be any dispute that this young girl was attacked.  There is not going to be any suggestion that she is lying about being attacked and lying about the manner in which she was attacked. . . .  The issue in this case is whether the correct perpetrator has been identified."  Along the same lines, defense counsel said in closing argument:  "The defense is not suggesting that Jane Doe wasn't attacked, that she didn't go through what she went through, that there was no assault.  We are not suggesting there was consent or anything like that.  [¶]  The issue

8

here that you have to address is regarding identity and was Charles James the man who attacked Jane Doe on December 13, 2012. [¶] The primary evidence in this case is the in-court identification and the DNA evidence." Accordingly, the admission of Jane Doe's out-of-court statements did not constitute prejudicial error.

**DISPOSITION**

The judgment is affirmed.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

9