Filed 8/5/22  P. v. Nelson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C092697 |
| v. | (Super. Ct. No. 19FE017300) |
| JAMES DENERICK NELSON, | |
| Defendant and Appellant. | |

Defendant James Denerick Nelson was convicted of indecent exposure and committing a lewd and lascivious act on a child, the daughter of his girlfriend.  The trial court sentenced him to an aggregate prison term of eight years eight months.

Defendant now contends (1) the trial court abused its discretion in admitting uncharged sexual offense evidence, testimony by the victim's sister under the fresh complaint doctrine, and a detective's testimony relating victim statements under the prior consistent statement exception to the hearsay rule, and if defendant forfeited the latter contention, his counsel was ineffective in failing to object; (2) the abuse of discretion was

1

cumulatively prejudicial; and (3) the matter should be remanded so the trial court can recalculate presentence credit.[1]

We conclude (1) the trial court did not abuse its discretion in admitting the uncharged sexual offense evidence or the fresh-complaint evidence, defendant's challenge to the prior consistent statement evidence was forfeited, and defendant has not established ineffective assistance; (2) the claim of cumulative prejudice lacks merit; and (3) we will remand the matter so the trial court can recalculate presentence credit.

BACKGROUND

Defendant dated K.D.'s mother and lived with the mother, K.D., and K.D.'s older sister. One night, defendant entered K.D.'s bedroom with his robe open. The sister was sleeping at a friend's house and K.D.'s mother was sleeping in K.D.'s bedroom because K.D. was sick. Defendant stood over K.D.'s bed with his penis exposed. He put his hand inside the front of K.D.'s leggings and underwear and stuck his fingers inside K.D.'s vagina. K.D. turned over and pretended to be asleep. Defendant kept is fingers inside K.D. for maybe 10 minutes. His fingers went in and out of her vagina. K.D. was too scared to say anything. Defendant lived with K.D. and her family approximately four or five months after the incident.

K.D. said the incident affected her behavior. She was getting in trouble at school. K.D. first told her sister what happened. K.D. denied telling her sister to get out of trouble at school.

The sister said K.D. started having emotional breakdowns, a change in K.D.'s behavior. The sister testified that she and K.D. did not feel comfortable living with defendant. The sister saw defendant touching his penis by the back door.

---

[1] Defendant's opening brief on appeal also claimed his trial counsel was ineffective in failing to challenge the denial of defendant's motion to dismiss on statutory speedy trial grounds, but he withdrew that claim in his reply brief.

The sister told the mother's new boyfriend David about K.D.'s disclosure and the boyfriend and mother called the police. Sacramento Police Department Officer Brandon Calderon interviewed K.D. the next morning, February 12, 2019. K.D. reported that defendant entered her bedroom in a robe, re-entered her bedroom naked, sat at the side of her bed and touched her inappropriately. She said he inserted his fingers in her vagina. K.D. appeared scared during the interview. She had a difficult time giving the officer details. She said the incident occurred about a year earlier but she did not remember the exact date. In response to the officer's question about the timing of her disclosure, K.D. said she was just ready to tell. K.D. did not tell the officer she was getting in trouble at school.

K.D. participated in a SAFE interview the following week. Sacramento Police Department Detective Konrad Von Schoech testified about K.D.'s SAFE interview statements. He said K.D. related that her mother's ex-boyfriend entered her bedroom while she was in bed and his penis was exposed through his bathrobe. He put his hand inside K.D.'s pants and digitally penetrated her vagina with his fingers.

K.D. did not remember the exact date the incident with defendant occurred. She told the SAFE interviewer the incident occurred maybe in May 2018, four months after she turned 11. But defendant was incarcerated at the Sacramento County Jail from March 8, 2018 to August 28, 2018. At trial, K.D. said her SAFE interview statement about when the incident occurred was a mistake because the incident happened before she turned 11. She explained it was not easy for her to remember dates. She testified the incident occurred before her mother got a restraining order against defendant, something she had previously told law enforcement officers. K.D.'s mother got the restraining order on February 20, 2018. Detective Von Schoech testified that based on his training and experience, it was common for victims to remember what happened but not the exact date of the incident.

3

K.D. also testified that a couple of weeks after the incident with defendant, she told her friend Natalia that she did not feel safe and that she was being hurt through her mother's relationship with defendant. K.D. testified she did not tell Natalia the details of the incident. But K.D. told law enforcement officials that she told a friend in December 2018 or January 2019 that something had happened. Natalia testified that in sixth grade, K.D. told her and another friend that her mother's boyfriend James had raped her. Detective Von Schoech testified that in his experience, young people mean different things by "rape" and rape generally means some violation of their body. Natalia testified that K.D. was crying a lot and it was unusual behavior. Natalia did not tell a grownup about K.D.'s disclosure because she did not know if K.D. was telling the truth. Natalia said K.D. lied about stuff, but based on how K.D. was acting when she made the disclosure, Natalia thought K.D. was telling the truth about the incident.

The prosecutor also presented evidence of defendant's uncharged sexual offenses. C.W. testified that in 2016, she was out in her front yard with her seven-year-old son. She said defendant stood across the street from her, pulled out his penis and masturbated to ejaculation while looking at her. Defendant was convicted of indecent exposure for the C.W. incident. In addition, Jaimee L. testified that one morning in June 2019, defendant exposed his penis on a Light Rail train and masturbated in front of her. There were other people sitting around Jaimee L. Defendant was convicted of indecent exposure in relation to the Jaimee L. incident. Also, Cheryl S. testified that one afternoon in March 2018, defendant sat across from Cheryl S. in a church lobby open to the public, looked at her, smiled and touched his penis with his hands in his shorts pockets. No one else was in the lobby. Defendant then lifted his shorts up and exposed his penis to Cheryl S. three times, smiling and grinning while looking at Cheryl S. His penis was erect. Defendant was convicted of indecent exposure in relation to the Cheryl S. incident.

The jury convicted defendant of committing a lewd and lascivious act upon K.D. (Pen. Code, § 288, subd. (a) -- count one) and indecent exposure (§ 314, subd. (1) --

4

count three).[2]  The trial court sentenced defendant to an aggregate prison term of eight years eight months.

## DISCUSSION

### I

Defendant contends the trial court abused its discretion in admitting the uncharged sexual offense evidence, the testimony by K.D.'s sister under the fresh complaint doctrine, and Detective Von Schoech's testimony relating K.D.'s statements under the prior consistent statement exception to the hearsay rule.  Defendant further argues that if he forfeited the latter contention, his counsel was ineffective in failing to object.  We address each argument in turn.

### A

Defendant claims the trial court abused its discretion in admitting the evidence of uncharged sexual conduct under Evidence Code sections 1108 and 352 because the uncharged offenses were substantially different from the charged offenses.

The People moved in limine to admit evidence of defendant's uncharged sexual conduct under Evidence Code section 1108.  Four incidents involved convictions for violating section 314, subdivision (1) (indecent exposure) and defendant moved to exclude that evidence.

The challenged uncharged offenses involved convictions for masturbation and penis exposure to female victims in a Light Rail train, at a church lobby, during a blood draw procedure, and on a front porch.[3]  The prosecutor argued the victims ranged in age from the early 20's to 61, other people were around when defendant committed the

---

[2] Undesignated statutory references are to the Penal Code.

[3] The prosecutor ultimately did not present evidence relating to the blood draw procedure incident because the trial court denied the People's request to allow the witness to testify remotely.

offenses, defendant did not touch or attempt to touch the victims, and defendant had no restraint in committing sexual offenses, given the range of locations and ages of the victims.

Defendant countered that although the evidence might be probative on the indecent exposure charge, it was not relevant to the lewd acts charge because the uncharged offenses were markedly different. He argued the uncharged offenses were committed in daylight, in public, against strangers, and did not involve any assaultive conduct; whereas the charged offenses occurred at home, at night, and against a victim defendant knew.

As a general rule, evidence of a defendant's prior conduct is inadmissible when offered by the prosecution to prove the defendant's conduct on a specific occasion, unless it involves commission of a crime, civil wrong or other act and is relevant to prove some fact (e.g., motive, intent, plan, identity) other than a disposition to commit such an act. (Evid. Code, § 1101, subd. (b); *People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta*).) Evidence Code section 1108 is an exception to the general rule. (*People v. Erskine* (2019) 7 Cal.5th 279, 295.) Evidence Code section 1108, subdivision (a) provides, "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352."

In enacting Evidence Code section 1108, the Legislature recognized the need for uncharged sexual offense evidence " 'given the serious and secretive nature of sex crimes and the often resulting credibility contest at trial.' " (*Falsetta, supra*, 21 Cal.4th at p. 911.) " '[T]he Legislature "declared that the willingness to commit a sexual offense is not common to most individuals; thus, evidence of any prior sexual offenses is particularly probative and necessary for determining the credibility of the witness." ' ". (*People v. Story* (2009) 45 Cal.4th 1282, 1293 (*Story*).) Evidence Code section 1108

6

permits the jury in a sex offense case to consider evidence of uncharged sexual offenses for any relevant purpose subject only to an Evidence Code section 352 weighing of prejudicial effect and probative value. (*People v. Loy* (2011) 52 Cal.4th 46, 63 (*Loy*).) Evidence of a defendant's uncharged sexual offenses may be considered in evaluating the victim's and the defendant's credibility, the defendant's disposition or propensity to commit sex crimes, and the probability or improbability that the defendant committed the charged sexual offenses. (*Falsetta,* at pp. 911-912, 915, 920.)

Under Evidence Code section 1108, a trial court may not deem uncharged sexual offense evidence unduly prejudicial per se, but must engage in a careful weighing process under Evidence Code section 352, considering "such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*Falsetta, supra*, 21 Cal.4th at pp. 916-917.) The factors to be considered depend on the unique facts and issues of each case. (*People v. Hernandez* (2011) 200 Cal.App.4th 953, 965 (*Hernandez*).) The probative value of the uncharged sexual offense evidence "is increased by the relative similarity between the charged and uncharged offenses, the close proximity in time of the offenses, and the independent sources of evidence (the victims) in each offense." (*Falsetta,* at p. 917.) "[T]he prejudicial impact of the evidence is reduced if the uncharged offenses resulted in actual convictions and a prison term, ensuring that the jury would not be tempted to convict the defendant simply to punish him for the other offenses, and that the jury's attention would not be diverted by having to make a separate determination whether defendant committed the other offenses." (*Ibid*., italics omitted.) We review a trial court's ruling admitting

7

evidence under Evidence Code sections 1108 and 352 for abuse of discretion, looking at what was before the trial court at the time it made its ruling. (*Story, supra*, 45 Cal.4th at p. 1295; *People v. Robertson* (2012) 208 Cal.App.4th 965, 991 (*Robertson*).)

The similarity between the uncharged and charged sexual offenses is only one factor the trial court considers under Evidence Code section 1108. (*Falsetta, supra*, 21 Cal.4th at pp. 916-917; *Robertson, supra*, 208 Cal.App.4th at p. 991.) Uncharged sexual offenses that are very similar in nature to the charged crimes logically have more probative value in proving propensity to commit the charged crimes. (*Hernandez, supra*, 200 Cal.App.4th at p. 966.) However, "there is no requirement that the charged and uncharged offenses be so similar that evidence of the prior acts would be admissible under [Evidence Code] section 1101. If such strict similarities were required, '[Evidence Code ]section 1108 would serve no purpose. [Instead, i]t is enough the charged and uncharged offenses are sex offenses as defined in [Evidence Code] section 1108.' " (*Hernandez,* at p. 966; accord *People v. Escudero* (2010) 183 Cal.App.4th 302, 311; see also *People v. Cordova* (2015) 62 Cal.4th 104, 133 [dissimilarity alone does not compel exclusion of uncharged conduct evidence]; *Loy, supra*, 52 Cal.4th at p. 63 [fact that prior crimes bore no similarity to the charged crimes was not dispositive]; *Robertson,* at p. 991 [similarity analysis under Evidence Code section 1101 does not apply when evidence is admitted under Evidence Code section 1108].)

Here, the uncharged sexual offenses were similar enough to the charged offenses to provide further evidence that defendant committed the charged offenses. In the uncharged offenses, defendant exposed his penis to female victims. In the charged offense, defendant exposed his penis to K.D. There was no question that defendant acted for his sexual gratification in the uncharged and charged sexual offenses. Moreover, the uncharged and charged acts were committed in the 2017 to 2019 time period. As the trial court found, defendant's commission of multiple acts of indecent exposure added to the probative value of the uncharged conduct evidence to show defendant's disposition to

8

commit sexual offenses.  (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 404 [sheer frequency of uncharged acts bolstered their relevance because it suggested a pattern of criminal behavior].)  The uncharged sexual offense evidence was probative of K.D.'s credibility where the charged offenses were committed without third party witnesses and defendant denied he committed the charged offenses and attacked K.D.'s credibility. (*Falsetta, supra*, 21 Cal.4th at pp. 911-912, 915.)  The dissimilarities in the uncharged incidents relate to the weight of the evidence and not its admissibility.  (*Hernandez, supra*, 200 Cal.App.4th at p. 967.)  The uncharged evidence was not more inflammatory than the charged offenses, which involved the touching of a young girl.  And the uncharged sexual offenses were not remote.  Further, there was no indication the uncharged evidence would require an undue consumption of time at the trial, and the evidence ultimately occupied only about 16 pages of the reporter's transcript.  Also, the uncharged offenses resulted in convictions.  Thus, the jury was not likely to confuse the issues or be tempted to punish defendant for the uncharged crimes.  (*Loy, supra*, 52 Cal.4th at p. 61.)

The trial court weighed the probative value and prejudicial effect of the uncharged evidence.  It ruled that although the uncharged sexual offenses involved different circumstances, defendant's repeated and consistent conduct of approaching females and exposing his penis was highly probative to whether he did the same thing to K.D.  But the trial court disallowed uncharged evidence unless the prosecutor could present a witness to testify in person at trial.  On this record, defendant fails to demonstrate that the trial court abused its discretion in admitting the uncharged sexual offense evidence under Evidence Code sections 1108 and 352.

B

Defendant also argues the trial court abused its discretion in admitting, under the fresh complaint doctrine, the testimony of the sister that K.D. said defendant had touched K.D. inappropriately and put his fingers inside K.D.  We will refer to the doctrine under

9

which the challenged testimony was admitted as the complaint doctrine, rather than the fresh complaint doctrine, because the California Supreme Court has held that the "freshness" of a complaint is not a prerequisite to admissibility of such evidence. (*People v. Brown* (1994) 8 Cal.4th 746, 750, 763 (*Brown*).)

The People moved in limine to admit K.D.'s statement to her sister disclosing defendant's misconduct under the complaint doctrine for nonhearsay purposes. Although defendant countered that the details of K.D.'s complaints were inadmissible, he conceded that testimony about the timing and circumstances of K.D.'s disclosure was admissible. The trial court said it would take up the issue when specific objections were made.

During the sister's testimony, the prosecutor asked what K.D. said about the touching and defense counsel objected on hearsay grounds. The trial court overruled the objection under the complaint doctrine. The trial court admonished the jury that the sister's testimony was not offered for the truth of the matter but only to give the jury context as to K.D.'s disclosure. The sister then testified that K.D. said defendant put his fingers inside K.D.

Outside the presence of the jury, defense counsel explained that his objection was to the details of the complaint and not to the fact that K.D. made a complaint. Defense counsel said there was no hearsay exception for K.D.'s statement to the sister. The trial court responded that the complaint doctrine permitted some of the testimony.

The California Supreme Court acknowledged that the premise underlying the common law fresh complaint doctrine -- i.e., that it is natural for a victim to promptly disclose a sexual offense -- has largely been discredited. (*Brown, supra*, 8 Cal.4th at pp. 759-760.) However, proof of an extrajudicial complaint made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose -- to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others -- so long as its probative value outweighs its prejudicial effect. (*Id.* at pp. 749-750, 759-760, 763.) The prosecution may present

10

extrajudicial complaint evidence to corroborate the victim's testimony, rebut any inferences that might be drawn from failure to complain, and help the jury determine whether the charged sexual offenses did or did not occur. (*Id.* at pp. 750, 759-761, 763-764; *People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1522 (*Ramirez*).) The evidence is not admitted for the truth of the matter stated. (*Brown,* at pp. 755, 763.)

Testimony about an extrajudicial complaint need not be limited to the bare fact of the complaint. "[I]t can be shown by the People 'that the complaint related to the matter being inquired into, and not a complaint wholly foreign to the subject' [citation]; that is, the alleged victim's statement of the nature of the offense and the identity of the asserted offender, without details, is proper." (*People v. Burton* (1961) 55 Cal.2d 328, 351, italics omitted (*Burton*).) We review the trial court's ruling for abuse of discretion. (*People v. Jimenez* (2019) 35 Cal.App.5th 373, 389.)

Defendant contends the sister's testimony that K.D. said defendant touched her inappropriately and put his fingers inside her was not admissible under the complaint doctrine. But defendant was charged with committing a lewd and lascivious act upon K.D. involving his finger to her genitalia, and the testimony by the sister showed that K.D.'s disclosure "related to the matter being inquired into" and was not a complaint "wholly foreign to the subject." (*Burton, supra*, 55 Cal.2d at p. 351, italics omitted; see also *People v. Fair* (1988) 203 Cal.App.3d 1303, 1306-1308 (*Fair*) [note written by the victim stating that the defendant made her touch his dick and he touched her vagina was admissible as a fresh complaint]; *People v. Meacham* (1984) 152 Cal.App.3d 142, 157-158 (*Meacham*) [victims' complaints that the defendant touched their bottom or removed their clothing was admissible as "recent complaints"]; *People v. Brown* (1973) 35 Cal.App.3d 317, 323-324 [victim's statement that the defendant committed an act of sodomy was properly admitted under the complaint doctrine]; *People v. Butler* (1967) 249 Cal.App.2d 799, 804-806 [victim's statement that " 'the man was sucking his thing' " was admissible under the complaint doctrine]; *People v. Cordray* (1963)

11

221 Cal.App.2d 589, 594 [victim's statement that the defendant pulled her pants down and kissed her between the legs was admissible under *Burton, supra*, 55 Cal.2d 328].) There was no abuse of discretion in admitting the extrajudicial complaint evidence.

Even if the challenged testimony exceeded the limits of what is admissible under the complaint doctrine, any error in admitting the testimony by the sister did not prejudice defendant because K.D. testified with more specificity. (See *Fair, supra*, 203 Cal.App.3d at p. 1308.) The jury did not have to rely on the extrajudicial complaint evidence but was able to hear details from K.D. directly, with defendant having an opportunity to cross-examine K.D. K.D.'s extrajudicial complaint statements were consistent with and cumulative of her trial testimony. Defendant fails to show it is reasonably probable the outcome would have been different had the trial court excluded the challenged testimony. (*Ramirez, supra*, 143 Cal.App.4th at p. 1526 [applying *People v. Watson* (1956) 46 Cal.2d 818 harmless error test to error in admitting hearsay evidence]; *Meacham, supra*, 152 Cal.App.3d at p. 160 [same].)

The trial court said that even if the complaint doctrine did not apply, based on the totality of the evidence, the testimony by the sister was admissible under the prior consistent or inconsistent statement exception to the hearsay rule and the trial court would still have overruled the objection. Although defendant argues the prior consistent and inconsistent statement exceptions do not apply, we do not consider the argument because admission of the challenged testimony was consistent with the complaint doctrine.

C

Defendant further contends the trial court abused its discretion in admitting, under the prior consistent statement exception to the hearsay rule, Detective Von Schoech's testimony relating K.D.'s SAFE interview statements.

The People moved in limine to introduce K.D.'s SAFE interview statements as prior consistent statements under Evidence Code section 780 in the event defendant

12

attacked K.D.'s credibility. Defense counsel deferred arguing the matter until K.D. testified. The judge confirmed the deferral and the prosecutor agreed. The trial court said it need not make a ruling at that time and defense counsel did not object.

Detective Von Schoech described K.D.'s SAFE interview statements after K.D. and her sister had testified. Among other things, he explained that K.D. said her mother's ex-boyfriend walked into her bedroom with his penis exposed, put his hand inside her pants, and digitally penetrated her vagina with his fingers. Defense counsel did not object to that portion of Detective Von Schoech's testimony, but defendant now challenges the testimony as inadmissible hearsay. The failure to object to admission of hearsay at trial forfeits an appellate claim that the evidence was improperly admitted. (Evid. Code, § 353, subd. (a); *People v. Stevens* (2015) 62 Cal.4th 325, 333.)

Anticipating a claim of forfeiture, defendant argues his trial counsel rendered ineffective assistance by failing to object.

To establish ineffective assistance of counsel, a defendant must prove that (1) his trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficiency resulted in prejudice to the defendant. (*People v. Maury* (2003) 30 Cal.4th 342, 389 (*Maury*); *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674] (*Strickland*).) If a defendant makes an insufficient showing on either of those components, his ineffective assistance claim fails. (*People v. Holt* (1997) 15 Cal.4th 619, 703; *Strickland*, at p. 687.)

We review trial counsel's performance with deferential scrutiny, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and recognizing the many choices that attorneys make in handling cases and the danger of second-guessing an attorney's decisions. (*Maury, supra*, 30 Cal.4th at p. 389; *Strickland, supra*, 466 U.S. at p. 689.) "It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses

counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.  All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009, original italics.)

The record is silent about why defendant's trial counsel did not object to the challenged testimony.  "The decision whether to object to evidence at trial is a matter of tactics and, because of the deference accorded such decisions on appeal, will seldom establish that counsel was incompetent." (*People v. Lucas* (1995) 12 Cal.4th 415, 444; accord *People v. Perry* (1969) 271 Cal.App.2d 84, 114-115.)  Defendant's trial counsel may have reasonably decided not to object because K.D. had already testified to the details.  We accord " 'great deference to [defense trial] counsel's tactical choices' " (*People v. Mickel* (2016) 2 Cal.5th 181, 198) and have no basis upon which to determine that trial counsel's representation was deficient.

II

Defendant asserts the judgment should be reversed because the abuse of discretion was cumulatively prejudicial.

"[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error." (*People v. Hill* (1998) 17 Cal.4th 800, 844.)  Defendant has not demonstrated a series of trial errors or that he did not receive due process and a fair trial.  We reject the claim of cumulative prejudice.

III

Finally, defendant claims the matter must be remanded so that the trial court can award the correct number of actual custody and conduct credits.

At the sentencing hearing, the trial court verbally awarded defendant 95 days of presentence credit (83 actual days and 12 conduct days).  But the abstract of judgment

14

indicates defendant was awarded 328 days of presentence credit (285 actual days and 43 conduct days). In addition, the trial court sentenced defendant in two violation of probation cases and awarded presentence credit in those cases.

The People suggest that the credit awards in this case and the violation of probation cases may have been inadvertently confused. They agree remand is appropriate, and we do too.

## DISPOSITION

The matter is remanded to the trial court with directions to recalculate and award the presentence credit to which defendant is entitled, to prepare an amended abstract of judgment, and to forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

/S/
_____
MAURO, J.

We concur:


/S/
_____
HULL, Acting P. J.


/S/
_____
HOCH, J.

15